UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SOUTH SHORE SAVINGS BANK,           )
SUCCESSOR-BY-MERGER TO SOUTH        )
WEYMOUTH SAVINGS BANK,              )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       CIVIL ACTION NO. 05-11754RGS
                                    )
JOEL K. LOGAN, INDIVIDUALLY AND AS  )
TRUSTEE OF CRESTVIEW MANAGEMENT     )
TRUST; MARY ELLEN LOGAN,            )
INDIVIDUALLY AND AS TRUSTEE OF      )
CRESTVIEW MANAGEMENT TRUST;         )
MASSACHUSETTS DEPARTMENT OF         )
REVENUE, J. GLAB, LLC AS ASSIGNEE OF )
KING DAVID TRUST; CIRELLI FOODS, INC.; )
INTERNAL REVENUE SERVICE; JONATHAN  )
BASHEIN AS ASSIGNEE OF NIXON        )
PEABODY, LLP; ROBERT J. GRIFFIN, ESQ.; )
THOMAS F. REILLY, ATTORNEY GENERAL  )
OF THE COMMONWEALTH OF              )
MASSACHUSETTS; THE COMMONWEALTH     )
OF MASSACHUSETTS BY ITS DEPARTMENT  )
OF PUBLIC HEALTH; HEALTHCARE        )
CAPITAL RESOURCES, INC., AND HCFP   )
FUNDING, INC., SUCCESSOR-IN-INTEREST )
TO HEALTH PARTNERS FUNDING, L.P.,   )
                                    )
            Defendants.             )

## AFFIDAVIT OF JOHN GLAB

I, John Glab, on oath hereby depose and state as follows:

1.    I am an individual residing at 8 Abington Avenue, Holbrook, Massachusetts

02343, and the sole Manager of J Glab LLC. J Glab LLC has two members: myself and Arthur

Simons. This Affidavit is based upon facts that are personally known by me and/or upon records and other documents reviewed by me in my capacity as manager of J Glab LLC.

      2.      Prior to the foreclosure sale conducted by Plaintiff, title to the property located at 86 Greenleaf Street, Quincy, Massachusetts (the "Property") was held by Joel K. Logan, Trustee of Crestview Management Trust, u/d/t recorded 2/28/1985 in the Norfolk County Registry of Deeds in Book 6610, Page 363, via deed recorded February 28, 1985, in Book 6610, Page 371. A true and accurate copy of the deed is attached hereto as Exhibit "A."

      3.      J Glab LLC is the present holder of an execution (the "Execution") in the amount of $1,089,068.31 recorded against the Property on December 23, 2003 in the Norfolk County Registry of Deeds at Book 20356, Page 267.  A true and accurate copy of the Execution is attached hereto as Exhibit "B."  The Execution issued in a matter entitled *Michael Hunter, as Trustee of King David Trust v. Florence E. Logan, et al.*, Norfolk Superior Court, Civil Action No. NOCV2003-00300 (the "King David Action"), against various defendants, including Joel Logan, Mary Logan, and Joel K. Logan in his capacity as Trustee of Crestview Management Trust.  Neither Mr. Simons nor myself is related, directly or indirectly, to any of the defendants in the King David Action.  Although not critical to the motion for summary judgment, the priority established by the Execution relates back to the attachment made on March 17, 2003. *See* Exhibit "B."

      4.      J Glab LLC is the present holder of the Execution by virtue of an Assign' Claim recorded in the Norfolk County Registry of Deeds at Book 21527, Page 121,

Assignment of Claim recorded in the Norfolk County Registry of Deeds at Book 21570, Page 281. True and accurate copies of the Assignments of Claim are attached hereto as Exhibit "C."

     5.     Since J Glab LLC acquired the Execution, it has recovered the following sums that would off-set any amounts due under the Execution:

     a.     The action entitled *Ora Mae Torres, et al. v. 78 Commercial Street LLC, et al.*, Norfolk Superior Court, Civil Action No. 2004-00951 was an interpleader action relating to surplus foreclosure proceeds from the foreclosure sale of 78 Commercial Street, Braintree, MA. By virtue of a lien in the King David Action, J Glab LLC recovered the sum of $19,099.42 on February 22, 2005.

     b.     The action entitled *Braintree Healthcare Real Estate Limited Partnership v. Michael Hunter, Trustee of King David Trust, et al.*, Land Court, Civil Action No. 298726 challenged an attachment (and subsequent levy of execution on that attachment) from the King David Action on property known as 95 Commercial Street, Braintree, MA. The property was previously owned by Elihu White LLC against whom the attachment and levy stood. J Glab LLC recovered the sum of $24,000 on November 24, 2004.

     c.     On December 16, 2004, J Glab LLC conducted a sheriff's sale of Joel Logan's interest in both 9 and 15 Thompson Road, Braintree, MA based upon another execution it held in the action entitled *Michael Hunter, as Trustee of King David Trust v. New England Healthcare Development Corporation, et al.*, Norfolk Superior Court (Massachusetts), Civil Action No. NOCV2001-00141 ("First King David Action"). J Glab LLC had the winning bid of $10,000.

At the present time, the outstanding amount of the Execution is in excess of $1,089,068.31 as the credits against the Execution are less than the interest owed.

     6.     Prior to the priority established by the Execution, there appeared two mortgage· in the chain of title to the Property and various documents relating thereto.

     7.     The first was a Mortgage and Security Agreement dated November 3, 1992 securing payment of a note in the original principal amount of $605,000 granted by Joel K Logan, Trustee of Crestview Management Trust, to Weymouth Savings Bank (which has

merged with South Shore Savings Bank (the "Bank")), recorded in Book 9592, Page 403, as affected by a Modification Agreement and Amendment to Mortgage dated as of June 24, 1998, recorded in Book 12606, Page 499 (collectively, the "First Mortgage"). A true and accurate copy of the First Mortgage is attached hereto as Exhibit "D."

8.     In connection with the First Mortgage, there also existed an Assignment of Rents and Other Rights dated November 3, 1992 granted by Joel K. Logan, Trustee of Crestview Management Trust, to Weymouth Savings Bank (which has since merged with the Bank), recorded in Book 9592, Page 418. A true and accurate copy of the Assignment of Rents and Other Rights is attached hereto as Exhibit "E."

9.     Also in connection with the First Mortgage, there existed a UCC-1 Financing Statement between Joel K. Logan, Trustee of Crestview Management Trust, as Debtor and South Shore Savings Bank, as Secured Party, recorded June 25, 1998 in Book 12606, Page 501. A true and accurate copy of the UCC-1 Financing Statement is attached hereto as Exhibit "F."

10.     The second mortgage was a Mortgage dated September 23, 1988 securing payment of a note granted by Joel K. Logan, Trustee of Crestview Management Trust, to US Trust, recorded in Book 8109, Page 278 (the "Second Mortgage"), which was subordinated to the First Mortgage by virtue of a Subordination Agreement dated November 3, 1992, recorded in Book 9592, Page 402. A true and accurate copy of the Subordination Agreement is attached hereto as Exhibit "G."

11.     In connection with the Second Mortgage, there exists a Conditional Assignment of Leases and Rents dated September 23, 1988 granted by Joel K. Logan, Trustee of Crestview Management Trust, to US Trust, recorded in Book 8109, Page 281, as affected by the

- 4 -

Subordination Agreement dated November 3, 1992, recorded in Book 9592, Page 402, as affected by an Amendment to Conditional Assignment of Leases and Rents dated November 28, 1994, recorded in Book 10741, Page 546, and as further affected by an Amendment to Collateral or Conditional Assignment of Lease and Rents dated September 26, 1997, recorded in Book 12037, Page 210. True and accurate copies of the amendment documents are attached hereto as Exhibit "H."

12.     On or about March 10, 2005, the Bank sought to enforce its rights under the First Mortgage and conducted a foreclosure sale of the Property (the "Foreclosure"). The Bank alleges that the Property was sold at the Foreclosure for the total amount of $995,000.00.

13.     On or about March 28, 2005, Citizens Bank of Massachusetts, as successor by merger to USTrust, holder of the Second Mortgage, discharged the Second Mortgage by recording a Discharge of Mortgage in Book 22218, Page 414. A true and accurate copy of the Discharge of Mortgage is attached hereto as Exhibit "I."

14.     By virtue of the Foreclosure of the First Mortgage and discharge of the Second Mortgage, J Glab LLC is the junior lienholder next in line to receive any surplus proceeds from the Foreclosure. As J Glab LLC is currently owed in excess of $1,089,068.31, and the total proceeds from the Foreclosure prior to satisfaction of the First Mortgage were $995,000, J Glab LLC is entitled to receive all surplus proceeds arising from the Foreclosure.

15.     The Bank also named Cirelli Foods, Inc. as a defendant in this matter. Cirelli Foods, Inc. appears to have had a real estate attachment against N.E. Health Ltd.

Partnership, Mark S. Logan, and Joel K. Logan. Although the real estate attachment does not appear to affect the Property, it was discharged by virtue of a Discharge of Real Estate Attachment recorded in the Norfolk County Registry of Deeds in Book 21982, Page 443. A true and accurate copy of the Discharge of Real Estate Attachment is attached hereto as Exhibit "J."

16.    At the present time, J Glab LLC is not aware of any other assets of Crestview Management Trust.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS _____ DAY OF

AUGUST, 2005.

John Glab, Manager of J Glab LLC

#320901 v1/36503/66

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each other party by mail (by hand)    5/31/05

# EXHIBIT A

37¹

We, Stephen J. Clinton and Helen M. Clinton, husband and wife as tenants by the entirety, both
of Quincy, Norfolk                                                              County, Massachusetts
in consideration of six hundred and sixty-two thousand five hundred dollars
($662,500.00) received

grant to Joel K. Logan, Trustee of the Crestview Management Trust under Declaration of Trust dated the 23th day of February 1985.

of       Braintree, Norfolk County, Massachusetts

with quitclaim covenants

~~XXXXXXXXX~~

A certain parcel of land with the buildings thereon situated in Quincy, Norfolk County, bounded and described as follows:

| | |
|---|---|
| SOUTHERLY | on Greenleaf Street, one hundred thirty (130) feet; |
| EASTERLY | on land now or formerly of Southworth, one hundred forty-five (145) feet; |
| NORTHERLY | on land now or formerly of Henry T. Gallagher/sixty (60) feet; |
| | et ux |
| WESTERLY | on land now or formerly of said Gallagher five (5) feet; and again |
| NORTHERLY | on land now or formerly of said Gallagher seventy (70) feet; and again |
| WESTERLY | on Putnam Street, one hundred forty (140) feet. |

Containing eighteen thousand five hundred (18,500) square feet of land by any or all of said measurements or contents more or less.

Being the same premises conveyed to Stephen J. Clinton and Helen M. Clinton by deed of Van Dalia Nursing Home, Inc. dated July 24, 1962, recorded with Norfolk Registry of Deeds Book 4003. Page 29.
See also confirmatory deed recorded with Norfolk Deeds Book 4251 Page 266.

Executed as a sealed instrument this       28th       day of       February       1985

_Stephen J. Clinton_

_Helen M. Clinton_

FEB 28
COMMONWEALTH OF MASSACHUSETTS
DEEDS EXCISE
$1820:015    $900.00

### The Commonwealth of Massachusetts

Norfolk                       ss.                                    February 28,   19 85

Then personally appeared the above named   Stephen J. Clinton and Helen M. Clinton

and acknowledged the foregoing instrument to be their   free act and deed.

Before me, _____

Notary Public

My commission expires                          19

WILLIAM J. McNULTY, JR.
Notary Public
My Commission Expires June 1, 1990

FEB 28 1985
COMMONWEALTH OF MASSACHUSETTS
DEEDS EXCISE
$1820:015    $810.50

RECEIVED/RECORDED 1985 FEB 28  PH 2:49

# EXHIBIT B

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY
*William P O'Donnell*
WILLIAM P. O'DONNELL, REGISTER

Bk 20356 Pg267 #296917
12-23-2003 @ 02:15p

# COMMONWEALTH OF MASSACHUSETTS

**NORFOLK, ss**

**No 03-300**    To the Sheriffs of our several Counties, or their Deputies

GREETING:

### WHEREAS, MICHAEL HUNTER, as Trustee of King David Trust

by the consideration of our JUSTICES OF OUR SUPERIOR COURT, holden at Dedham, within and for the County of Norfolk, aforesaid on the 10th day of November, 2003 recovered Judgment against **FLORENCE E. LOGAN, TODD S. LOGAN, ATRIUM HEALTHCARE LLC, THE ATRIUM NURSING CENTER, INC., THE ATRIUM NURSING CENTER LIMITED PARTNERSHIP, CRESTVIEW HEALTHCARE FACILITY, INC., JOEL K. LOGAN AND MARY ELLEN LOGAN, INDIVIDUALLY AND AS TRUSTEES OF CRESTVIEW MANAGEMENT TRUST, ELIHU WHITE REALTY LLC, LOGAN DEVELOPMENT INC., FLORENCE E. LOGAN, TRUSTEE OF LOGAN FAMILY REALTY TRUST, LOGAN HEALTHCARE, INC., LOGAN HEALTHCARE MANAGEMENT GROUP, INC., LOGAN HEALTHCARE REALTY LLC, LOGAN PARK NURSING AND REHABILITATION CENTER LLC, MERRIMACK HEALTHCARE DEVELOPMENT CORPORATION, POND MEADOW REALTY LLC, T.Q. HEALTHCARE MANAGEMENT AND CONSULTING, INC., 78 COMMERCIAL STREET LLC and 593 WASHINGTON PLACE LLC**

in an action of Complaint for the sum of one million fifty eight thousand eight hundred fourteen dollars and fourteen cents damages and fourteen thousand six hundred twenty five dollars attorney's fees as to us appears of record, with interest to date of this execution in the sum of fifteen thousand six hundred twenty nine dollars and seventeen cents whereof execution remains to be done:

**Dam 1,058,814.14**

**Atty   14,625.00**

**fee**

**int.____ 15,629.17**

    **1,089,068.31**

**WE COMMAND** you therefore, that of the goods, chattels or lands of the said Judgment Debtors, within your precinct, you cause to be paid and satisfied unto the said Judgment Creditor at the value thereof in money, the aforesaid sum being one million eighty nine thousand sixty eight dollars and thirty one cents in the whole, with interest thereon from the day of this execution, and thereof also to satisfy yourself for your own fees; and for want of goods, chattels or lands of the said Judgment Debtors to be by them shown unto you, or found within your precinct to the acceptance of the said Judgment Creditor to satisfy the sums aforesaid, with interest as aforesaid, we command you to take the body of said Judgment Debtors, Florence E. Logan, Todd S. Logan, Joel K. Logan and Mary Ellen Logan and them commit unto our jail in Dedham, in our County of Norfolk, or any jail in your precinct, aforesaid, and detain in your custody within our said jail until they pay the full sum above mentioned, with your fees, or be discharged by said Judgment Creditor, or otherwise. **A TRUE COPY ATTEST:**

**DEPUTY SHERIFF**

**DATE____**

3

Bk 20356  Pg 268 #296917

order of law.

      Hereof fail not, and make return of this writ with your doings thereon into the Clerk's office of our said **COURT**, at Dedham within our County of Norfolk, within 60 days after the date of this execution.

      **WITNESS,** Suzanne V. DelVecchio, Esquire at Dedham the 17th day of December in the year of our Lord two thousand and three.

                        *Mary K. Hockey*

                 **First Assistant Clerk**

**Bk 20356  Pg 269 #296917**





*The Commonwealth of Massachusetts*
*County of Norfolk*

**SHERIFF'S DEPARTMENT**
Division of Civil Process

Michael G. Bellotti
*Sheriff*

Jeffrey J. Nourse
*Director*

Date: 12/23/2003   Time: 8:35 am

Plaintiff: Michael Hunter as Trustee of King David Trust

Plaintiff's Attorney:  Rubin and Rudman LLP
Attorney's telephone number:  (617)330-7000
Defendant:  **Crestview Management Trust, Joel K.Logan, Trustee**
**Book: 6610 Page: 371**

Court of Issue: Norfolk Superior   Execution # 03-300

of   Braintree, Norfolk County, Massachusetts      with quitclaim covenants

xxxxxxxxx   *86 Greenleaf St.*

A certain parcel of land with the buildings thereon situated in
Quincy, Norfolk County, bounded and described as follows:

| | |
|---|---|
| SOUTHERLY | on Greenleaf Street, one hundred thirty (130) feet; |
| EASTERLY | on land now or formerly of Southworth, one hundred forty-five (145) feet; |
| NORTHERLY | on land now or formerly of Henry T. Gallagher/sixty (60) feet; et ux |
| WESTERLY | on land now or formerly of said Gallagher five (5) feet; and again |
| NORTHERLY | on land now or formerly of said Gallagher seventy (70) feet; and again |
| WESTERLY | on Putnam Street, one hundred forty (140) feet. |

Containing eighteen thousand five hundred (18,500) square feet
of land by any or all of said measurements or contents more or less.

By virtue of the attached execution, the original of which is in my hands for the purpose of
taking the above described real estate, I have this day levied upon, seized and taken all right,
title and interest that the within named Judgment Debtor had in such real estate in Norfolk
County when it was attached on mesne process on 3/17/2004.
Attached is a true copy of this execution on the above so much of my return as relates to the
levying upon, seizure, and taking of this real estate on the execution.

Deputy Sheriff
Jacket: 03021724

2015 Washington Street, ● P.O. Box 859215 ● Braintree, MA 02185-9215 ● Tel (781) 326-1787 ● Fax (781) 326-0288

**SERVING THE COMMUNITIES OF:**

AVON, BILLINGHAM, BRAINTREE, BROOKLINE, CANTON, COHASSET, DEDHAM, DOVER, FOXBOROUGH, FRANKLIN, HOLBROOK, MEDFIELD,
MEDWAY, MILLIS, MILTON, NEEDHAM, NORFOLK, NORWOOD, PLAINVILLE, QUINCY, RANDOLPH, SHARON, STOUGHTON, WALPOLE, WELLESLEY, WESTWOOD, WEYMOUTH, WRENTHAM

# EXHIBIT C

BK 21527 P121 #156692
09-10-2004 @ 11:05a

## ASSIGNMENT OF CLAIM

Michael Hunter, as Trustee of King David Trust (the "Trust"), a trust organized and existing pursuant to the laws of the Commonwealth of Massachusetts, and having a mailing address c/o Michael R. Coppock, Esq., Rubin and Rudman LLP, 50 Rowes Wharf, Boston, Massachusetts 02110, for payment of $250,000.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns to John Glab all right, title and interest in and to the claims of the Trust in those pending actions described on Schedule 1 hereto, and any matters which could have been raised therein. In addition, the Trust hereby assigns to John Glab any and all rights, claims, title and interest in or related to each and every one of the documents and instruments referenced on Schedule 1 hereto, together with any and all claims against Elihu White Realty, LLC and Elihu White Nursing Home, Inc. and any real estate that is or may have been owned by them.

Executed as a sealed instrument as of this ___7th___ day of July, 2004.

_____                    _____
Witness                                     Michael Hunter, as Trustee of King
                                            David Trust and not individually

### STATE OF ISRAEL

On this ___7th___ day of _____July_____, 2004, before me, the undersigned Notary Public duly registered with the Ministry of Justice in the State of Israel, personally appeared the above named **MICHAEL HUNTER**, whose identity was proved to me through satisfactory evidence of identification, which evidence was specifically his Identity Card issued by the Israeli Ministry of the Interior on 21st August 1985, to be the person who is identified as the signer of the preceding power of attorney, following which he signed the same in my presence; and he acknowledged to that he signed said power of attorney voluntarily for its stated purposes.

NOTARY PUBLIC
Print Name: Leslie Henan

#235562 v4/36503/62

CERTIFY
William P. O'Donnell
WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

**Serial No. 59.04**

מספר סידורי 59.04

## AUTHENTICATION OF SIGNATURE OF PERSON SIGNING ON BEHALF OF A BODY CORPORATE OR IN THE NAME OF ANOTHER PERSON

## אימות חתימתו של אדם בשם תאגיד או בשם אדם אחר

I hereby certify that on 07/07/2004 there appeared before me at my office in 46 Rothschild Blvd., Tel-Aviv, Israel Mr. Michael Hunter who is known personally to me signed of his own free will the **ASSIGNMENT OF CLAIM** dated 7.72004 as attached hereto and designated by the letter "A" as the Trustee of the **King David Trust** and in the name of the **King David Trust** and I certify that, with a view to establishing the right of the above to sign as a Trustee of the King David Trust and on behalf of the said Trust there has been produced to me a written Appointment of the said Trustee dated 2 .11. 2000.

In witness thereof I hereby authenticate the signature of the above named, by my own signature and seal today 07/07/2004.

הריני לאשר בוה כי ביום 07/07/04 ניצב לפני במשרדי בשד' רוטשילד 46 בתל-אביב, ישראל עו"ד מיכאל הנטר הידוע לי מידיעה אישית וחתם מרצונו החופשי על המסמך המצ"ב והמסומן באות "A" בשם **ASSIGNMENT OF CLAIM** מתאריך 7.07.2004 כנאמן של הקינג דויד טראסט ובשם הקינג דויד טראסט ואני מאשר כי לתוכחת רשותו הנ"ל לחתום כנאמן של ה- **King David Trust** ובשם חנאמנות הנ"ל הוצג בפני מינוי בכתב של תנאמן הנ"ל מיום 2.11.2000.

ולראיה חנני מאשר/ת את החותימה הנ"ל בחתימתי ידי ובחותמי, חיום 07/07/2004.

**Fees paid: 218 NIS Including VAT.**

שכרי בסך 218 ש"ח כולל מע"מ שולם.



חתימת הנוטריון
**SIGNATURE**

חותם הנוטריון
**Notary's Seal**

# APOSTILLE
## (Convention de la Haye du 5 October 1961)

1. STATE OF ISRAEL

    This public document

2. Has been signed by

    Advocate _L. Henan_

3. acting in capacity of Notary.

4. bears the seal/stamp of the above Notary

### Certified

5. at the Magistrates' Court, Tel-Aviv-Yafo

6. Date _____ 0 8 -07- 2004

7. by an official appointed by Minister of Justice under the Notaries Law, 1976.

8. Serial number _59 /04_

9. Seal/Stamp DANIELLA CARNI

    0 8. 07. 2004

10. Signature

TEL AVIV

---

0 8. 07. 2004

TEL

2. נחתם בידי

עו"ד _ל. הינן_

3. הפועל בתור נוטריון,

4. נושא את החותמת/חתימתו של הנוטריון הנ"ל

### אושר

5. בבית המשפט השלום תל-אביב-יפו

6. ביום

7. על ידי מי שמונה בידי שר המשפטים לפי חוק הנוטריונים, התשל"ו-1976.

8. מס' סידורי _59/04_

9. חותמת/חתימה

DANIELLA CARNI

0 8. 07. 2004

10. חתימה  TEL AVIV



## SCHEDULE 1

A.  *Michael Hunter, as Trustee of King David Trust v. New England Healthcare Development Corporation, et al.,* Norfolk Superior Court (Massachusetts), Civil Action No. NOCV2001-00141

   i.    Writ of Attachment ($425,000 against defendant New England Healthcare Development Corporation);

   ii.   Writ of Attachment ($425,000 against defendant Joel K. Logan);

   iii.  Writ of Attachment ($425,000 against defendant Lovette Logan);

   iv.   Default Judgment dated February 2, 2002;

   v.    Execution dated March 26, 2002 in the total amount of $416,064.17;

   vi.   Notice of recording of levy on Execution No. 2001-141 against Joel K. Logan as recorded at the Norfolk County Registry of Deeds at Book 9713, Pages 415 and 419;

   vii.  Notice of recording of levy on Execution No. 2001-141 against Joel K. Logan as recorded at the Plymouth County Registry of Deeds at Book 6100, Page 45; and

   viii. Notice of recording of levy on Execution No. 2001-141 against Mark Logan as recorded at the Barnstable Registry of Deeds as Document No. 867,347.

B.  *Michael Hunter, as Trustee of King David Trust v. Florence E. Logan, et al.,* Norfolk Superior Court (Massachusetts), Civil Action No. NOCV2003-00300

   i.    Default Judgment dated November 4, 2003;

   ii.   Execution dated December 17, 2003 in the total amount of $1,089,068.31;

   iii.  Writ of attachment ($475,000 against defendant Florence Logan as recorded at the Norfolk County Registry of Deeds at Book 18443, Pages 431-433);

   iv.   Writ of Attachment ($425,000 against defendant Joel K. Logan); and

   v.    Notices of Recording of Levy on Execution No. 2003-0300.

#235562 v4/36503/62



Bk 21570 P281 #162605
09-23-2004 ∂ 11:28a

## ASSIGNMENT OF CLAIM

John Glab, an individual residing at 8 Abingdon Avenue, Holbrook, Massachusetts, for payment of $10.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby assigns to J Glab LLC all right, title and interest in and to the claims of the John Glab obtained by virtue of an Assignment of Claim dated ~~June 28,~~ July 7 2004, a copy of which is attached hereto as Exhibit "A," from Michael Hunter, as Trustee of King David Trust (the "Trust") to John Glab, including those pending actions described on Schedule 1 thereto, and any matters which could have been raised therein. In addition, John Glab hereby assigns to J. Glab LLC any and all rights, claims, title and interest in or related to each and every one of the documents and instruments referenced on Schedule 1 thereto, together with any and all claims against Elihu White Realty, LLC and Elihu White Nursing Home, Inc. and any real estate that is or may have been owned by them. John Glab hereby warrants and represents that he has not assigned any rights or claims which are the subject of this Assignment.

Executed as a sealed instrument as of this ~~28th~~ 7th day of ~~June,~~ July 2004.

_____          _____
John Glab                        Witness
                                 Print Name: G. BRIAN SHONTZ

### COMMONWEALTH OF MASSACHUSETTS

Suffolk , ss.

On this ~~28th~~ 7th day of ~~June,~~ July 2004, before me, the undersigned notary public, personally appeared John Glab, proved to me through satisfactory evidence of identification, which was drivers license , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

_____
[Notarial Seal]          NOTARY PUBLIC

#293358-1/36503/62      Printed Name: Carolyn F. Wall
                        My Commission Expires: 1/20/06

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA
CERTIFY

WILLIAM P. O'DONNELL, REGISTER

b

## SCHEDULE 1

A.  *Michael Hunter, as Trustee of King David Trust v. New England Healthcare Development Corporation, et al.*, Norfolk Superior Court (Massachusetts), Civil Action No. NOCV2001-00141

   i.     Writ of Attachment ($425,000 against defendant New England Healthcare Development Corporation);

   ii.    Writ of Attachment ($425,000 against defendant Joel K. Logan);

   iii.   Writ of Attachment ($425,000 against defendant Lovette Logan);

   iv.    Default Judgment dated February 2, 2002;

   v.     Execution dated March 26, 2002 in the total amount of $416,064.17;

   vi.    Notice of recording of levy on Execution No. 2001-141 against Joel K. Logan as recorded at the Norfolk County Registry of Deeds at Book 9713, Pages 415 and 419;

   vii.   Notice of recording of levy on Execution No. 2001-141 against Joel K. Logan as recorded at the Plymouth County Registry of Deeds at Book 6100, Page 45; and

   viii.  Notice of recording of levy on Execution No. 2001-141 against Mark Logan as recorded at the Barnstable Registry of Deeds as Document No. 867,347.

B.  *Michael Hunter, as Trustee of King David Trust v. Florence E. Logan, et al.*, Norfolk Superior Court (Massachusetts), Civil Action No. NOCV2003-00300

   i.     Default Judgment dated November 4, 2003;

   ii.    Execution dated December 17, 2003 in the total amount of $1,089,068.31;

   iii.   Writ of attachment ($475,000 against defendant Florence Logan as recorded at the Norfolk County Registry of Deeds at Book 18443, Pages 431-433);

   iv.    Writ of Attachment ($425,000 against defendant Joel K. Logan); and

   v.     Notices of Recording of Levy on Execution No. 2003-0300.

# EXHIBIT D

132636    $3\prime$        403

## MORTGAGE AND SECURITY AGREEMENT

KNOW ALL MEN that JOEL K. LOGAN, Trustee of Crestview Management Trust u/d/t dated February 28, 1985 and recorded with Norfolk Deeds Book 6610, Page 363 and JOEL K. LOGAN and MARY ELLEN LOGAN of Norwell, Plymouth County, Massachusetts hereby grants unto South Weymouth Savings Bank (the "Mortgagee"), a Massachusetts banking corporation having its principal place of business at 88 Pleasant Street, S. Weymouth, Norfolk County, Massachusetts, with Mortgage Covenants to secure payment of SIX HUNDRED AND FIVE THOUSAND ($605,000.00) DOLLARS, with interest and any other charges thereon, payable as provided in a certain note of even date, together with all amendments, extensions and renewals now or hereafter made thereto (the "note"), and also to secure the performance of all covenants and agreements herein contained, the land at 86 Greenleaf Street, Quincy, Norfolk County, Massachusetts and 1035 Main Street, Norwell, Plymouth County, Massachusetts together with any improvements now or hereafter situated thereon, all as described in Exhibit "A" annexed hereto prior to the execution hereof and incorporated herein by reference as if fully set out herein.

Also all of the articles, fixtures and equipment owned by the Mortgagor and now or hereafter situate on above-described premises or used therewith, or which now or hereafter are made a part of the realty, together with all rents, issues, profits, insurance contracts and proceeds and taking awards or rights with respect thereto existing or hereafter arising.

The above-described realty, articles, fixtures, equipment, rents, issues, profits, insurance contracts and proceeds and taking awards and rights, together with any and all improvements now on such realty, or from time to time thereon, and any additions thereto or replacements thereof, construction materials owned by the Mortgagor whether or not incorporated into the premises, permits, plans, and construction contract rights are herein collectively referred to as the "Property".

The Mortgagor covenants and agrees that, as of the execution hereof and upon the subsequent acquisition of any Property which is subject to the Uniform Commercial Code ("Personal Property"), the Mortgagor shall:

(a) provide the holder with a precise inventory of the same, as and when acquired;

(b) execute and deliver to the holder, in form appropriate for recording and filing first security agreement and financing statements on all Personal Property;

RECEIVED
NORFOLK COUNTY
92 NOV -4 AM 10: 32

(c)  provide to the holder such other assurances as may be required by the holder to establish the holder's first and prior security interest in all Personal Property; and

(d)  execute, deliver and cause to be recorded and filed from time to time, without notice or demand, and at the Mortgagor's sole cost and expense, continuances and such other instruments as will maintain the holder's priority of security in all Personal Property.

The Mortgagor Covenants:

(1)  To pay 10 days at least before the same become delinquent (and to provide, by such time, evidence of such payment, satisfactory to the holder) all taxes, charges, sewer use fees, water rates and assessments of every name and nature, whether or not assessed against the Mortgagor, if applicable or related to the Property, or any interest therein, or the debt, obligation or any agreement secured hereby, or the disbursement or the application of the proceeds thereof, but nothing in this Section 1 contained shall, however, extend to any income tax or corporation excise tax of the holder;

(2)  that if at any time any law or court decree prohibits the performance of any obligation undertaken herein by the Mortgagor, the holder shall have the right, on 30 days' prior notice to the Mortgagor, to require payment in full of the entire indebtedness secured hereby;

(3)  to assure the payment of all taxes, charges, sewer use fees, water rates, ground rents, assessments of every name and nature, or any other obligation which may have or acquire priority over this Mortgage, and which are assessed or payable with reference to the Property, the Mortgagor, if so requested by the holder, shall deposit with the holder, on each day when any payment under the Note is required to be made, a sum determined by the holder to be sufficient to provide, in the aggregate, a fund adequate to pay any such amounts 10 days at least before the same become delinquent; and wherever the holder determines sums accumulated under the provisions of this Section 3 to be insufficient to meet the obligation for which such deposits were made, the Mortgagor shall pay, on the demand of the holder, any amount required to cover the deficiency therein; every deposit may, at the option of the holder, be applied directly against the obligation with reference to which it was made, or, to the full extent permissible according to law, any other obligation of the Mortgagor secured hereby; such deposits may be comingled with other assets of the holder and, in the

discretion of the holder, invested by the holder for its own account, without any obligation to pay income from such investment, or interest on such deposits, to Mortgagor, or to account to Mortgagor for such income and in any manner;

(4) to keep the Property in good order, repair and condition subject to provisions of Section 6, damage from casualty expressly not excepted, but subject to the provisions of Section 6 herein, and not to permit or commit waste on the Property, nor to remove or alter anything which constitutes a part of the Property without the consent of the holder excepting only non-structural alterations and structural alterations of a minor nature, and to permit the holder to enter the Property, at any reasonable time, upon reasonable notice, to determine whether the Mortgagor is in compliance with its obligations under this Mortgage; not to violate or permit the violation or breach of any covenant, agreement, permit, license or order affecting the Property; and all construction on the Property shall comply with, and each and every part of the Property shall be maintained and used in accordance with, any lawful requirement or provision, public or private, relating to the same or the use thereof;

(5) to carry with respect to the Property and its use such insurance as the holder may from time to time require and as may from time to time be required by any applicable federal, state or local law or regulation; and all insurance (with evidence of payment of premiums thereon satisfactory to the holder) so required to be maintained, together with any other insurance with respect to the Property maintained by the Mortgagor, shall be deposited with, and, except for public liability coverage and any other coverage the holder may determine shall not be payable to it in case of loss, shall be first payable in case of loss to the holder; all renewals or replacements of such insurance from time to time in force together with evidence of payment of premiums thereon satisfactory to the holder shall be delivered to the holder 10 days at least before the expiration date of then current insurance; all insurance required as aforesaid to be maintained with respect to the Property shall be written by such companies, on such terms, in such form and for such periods and amounts as the holder shall from time to time approve, and shall contain a clause providing that such policy may not be cancelled without twenty (20) days prior written notice to the Mortgagee; and no settlement on account of any loss covered by such insurance shall be effected without the consent of the holder;

(6) the proceeds of any hazard insurance shall, at the option of the holder, be applied to or toward the indebtedness secured hereby in such order as the holder may determine (in which event the Mortgagor shall be relieved of the obligation in Section 4 of this Mortgage to the extent

... 406

of the repair of that part of the Property damaged by the
hazard with respect to which insurance is paid); or if the
holder shall require repair of that part of the Property so
damaged by such insured hazard, the holder shall release to
the Mortgagor insurance proceeds paid to it upon such

conditions as the holder may prescribe and upon completion
of such repair shall, at the holder's option, apply any
excess insurance proceeds to or toward the indebtedness
secured hereby in such order as the holder may determine or
release the same to the Mortgagor; notwithstanding anything
in this Section 6 to the contrary, however, if the insurer
denies liability to the Mortgagor, the Mortgagor shall not
be relieved of any obligation under Section 4 of this
Mortgage, whether or not the proceeds of insurance are
applied to or toward the indebtedness secured hereby;

(7) the awards of damages on account of any
condemnation for public use of or injury to the Property
shall be paid to the holder; such awards shall, at the
option of the holder, be applied to or toward the
indebtedness secured hereby in such order as the holder may
determine, in which event the Mortgagor shall be relieved of
the obligation in Section 4 of this Mortgage to the extent
of the repair of that part of the Property which remains and
which has been damaged or injured by such public action; or
if the holder shall require restoration of that part of the
Property which remains, the holder shall release to the
Mortgagor such awards paid to it upon such conditions as the
holder may prescribe, but not more than such portion of such
awards as may be required to repair such damage or injury;
and any balance remaining shall be applied by the holder to
or toward the indebtedness secured hereby in such order as
the holder may determine;

(8) not to lease the property or any substantial part
thereof, except for actual occupancy; otherwise faithfully
to keep, observe and satisfy all the obligations on the part
of the lessor to be kept, performed and satisfied under
every lease from time to time in force with reference to the
Property, and not to alter or terminate any such lease or
accept any rentals for more than one month in advance; and,
at any time on notice from the holder, to submit to the
holder for examination of all such leases and on the demand
of the holder, to assign and deliver to the holder any or
all such leases, or the rents and profits thereof, such
assignments to be in form satisfactory to the holder, but in
all events to provide that the Mortgagor shall retain the
rents and profits thereof until a default occurs in any
covenant or condition in this Mortgage; and the holder shall
have the right, by the execution of suitable written
instruments from time to time to subordinate this Mortgage,
and the rights of the holder hereunder, to any lease or

leases from time to time in force with reference to the Property, and, on the execution of any such instrument, this Mortgage shall be subordinate to the lease for which such subordination is applicable with the same force and effect as if such lease had been executed and delivered, and a notice thereof recorded to the extent required to give notice to third persons, prior to the execution, delivery and recording of this Mortgage;

(9) if the Mortgagor shall obtain from a lessee of the Property or a part thereof, a deposit to secure such lessee's obligations, such funds, if so requested by the holder, shall be deposited with the holder in an account which shall be governed by the terms of Section 3 of this Mortgage to the extent not inconsistent with the provisions of the lease under which such deposit is made; but any such deposit shall be returned to the Mortgagor when required, by the terms of any such lease, to be paid over to the lessee;

(10) if the Mortgage, by its terms, is now, or at any time, subject or subordinate to a prior mortgage, the Mortgagor shall not, without the consent of the holder, agree to the modification, amendment or extension of the terms or conditions of such prior mortgage;

(11) that if the payment of any installment on account of principal or interest due under the Note is delinquent for 10 days or more, the Mortgagor shall pay, in addition to any other sums due under this mortgage (and without limiting the holder's other remedies on account thereof) a sum equal to 5% of the amount of such delinquency except where the Note otherwise provides, in which case the provision of the Note shall govern;

(12) to pay when due all fees and charges incurred incident to the loan transaction evidenced by the Note and secured by this Mortgage, the assurance of the security represented by this Mortgage, and incident to the enforcement of the Note and this Mortgage and any other obligation secured by this Mortgage;

(13) that, from time to time, on the request of the holder, the Mortgagor shall furnish a written statement, signed, and, if requested, acknowledged, setting forth the amount of the indebtedness which the Mortgagor acknowledges to be due on the Note and under this Mortgage, specifying any claims of offset or defense which the Mortgagor asserts against the indebtedness secured hereby or any obligations to be paid or performed hereunder, and the then state of facts relative to the condition of the Property;

(14) whether or not for additional interest or other consideration paid or payable to the holder, no forbearance

408

on the part of the holder or extension of the time for the payment of the whole or any part of the obligations secured hereby whether oral or in writing, or any other indulgence given by the holder to the Mortgagor or to any other party claiming any interest in or to the Property, shall operate to release or in any manner affect the original liability of the Mortgagor, or the priority of this Mortgage or to limit, prejudice or impair any right of the holder, including, without limitation, the right to realize upon the security, or any part thereof, for the obligations secured hereby or any of them, notice of any such extension, forebearance or indulgence being hereby waived by the Mortgagor and all those claiming by, through or under the Mortgagor; and no consent or waiver, express or implied by the holder to or of any default by the Mortgagor shall be construed as a consent or waiver to or of any further default in the same or any other term, condition, covenant or provision of this Mortgage or of the obligations secured hereby; in case redemption is had by the Mortgagor after foreclosure proceedings have begun, the holder shall be entitled to collect all costs, charges and expenses incurred up to the time of redemption; in case of foreclosure sale, the holder shall be entitled to retain 1% of the purchase money in addition to the costs, charges and expenses allowed under the Statutory Power of Sale; and in case any one or more of the provisions of this Mortgage may be found to be invalid, or unenforceable for any reason or in any respect, such invalidity or unenforceability shall not limit or impair enforcement of any other provision hereof;

(15) that wherever notice, demand or a request may properly be given to the Mortgagor under this Mortgage, the same shall always be sufficient to serve as a notice, demand or request hereunder if in writing and posted in the United States mail by registered or certified mail, addressed to the Mortgagor at the a) address given in this Mortgage, unless holder is notified in writing as to a change therein in which case notice shall be sent to Mortgagor's address as last provided to holder, or b) the business address of the Mortgagor last provided to the holder in writing by the Mortgagor; and any such notice, demand or request shall be treated as having been given upon such deposit in the United States mails; and a notice so addressed shall always be a sufficient notice, notwithstanding a change in the ownership of the equity of redemption of the Property, whether or not consented to by the holder; and where more than one person constitutes the Mortgagor, one notice sent to the address given in this Mortgage as the Mortgagor's address or the last known business address of any one or any one of them shall constitute sufficient notice to all;

(16) <u>Conditions.</u>  The following are conditions of this Mortgage:

(a)   The foregoing   covenants  and  any   additional covenants set forth in this Mortgage shall not be breached.

(b)   Except for real estate taxes and assessments until ten (10) days before  any delinquency therein  (delinquency, with reference to such taxes and assessments being hereby defined, for the purposes of  this Mortgage, as meaning  the time when, on the non-payment thereof, interest or penalties commence to  accrue), the  Mortgagor  shall not create  any encumbrance on  the Property  even  if such  encumbrance  is inferior to this Mortgage.

The foregoing prohibition shall  include leases  or subleases of all or any portion of the Property, except  as may be approved in writing by the Mortgagee.

(c)   The  Mortgagor   shall not   permit any   other encumbrance to  exist against  the Property, even  if  such encumbrance  is   inferior   to this  Mortgage.    Without limitation, the filing of a  notice of federal or state  tax lien with the Mortgagee or at  the office at which, by  law, such notice is to be filed to be effective against the  Real Estate, whether or not such  lien applies, in terms, to  the Real Estate, shall be a breach of this condition.

(d)   The Mortgagor shall  not voluntarily transfer  the legal or equitable interest in  the equity of redemption  in the Real Estate, or any part thereof, and, if the  Mortgagor is a trustee or trustees, the Mortgagor shall not permit  the dissolution or termination of his or their trust or a change in the beneficial interests therein.

(e)   The Mortgagor  shall not  file a  petition or  any application   for  relief,    extension,   moratorium   or reorganization under any bankruptcy, insolvency or  debtor's relief law,  or make  an  assignment  for  the benefit  of creditors or  enter  into any  trust  mortgage arrangement, so-called, or consent  to the appointment  of a receiver  of any of the property of the Mortgagor.

(f)   The Mortgagor shall not permit any petition  under any bankruptcy,  insolvency or debtor's  relief  law  filed against it to remain undischarged for a period of more  than sixty (60)  days after  the filing  thereof, nor  shall  the Mortgagor  permit  the  continuation  of  any   receivership proceedings instituted against it for more than a period  of sixty (60) days after the commencement thereof.

17.  **Breach of Conditions.**   If there  shall be  any breach of the conditions of sections 16(b), 16(d) and 16(e), or if there shall  be any breach of  any other condition  or covenant of this mortgage, including the failure to make  any payment when due  under the Note or Mortgage,  which  shall

9592

410

exist for more than thirty (30) days after written notice of
such breach from the Lender (except where a period of grace
is specifically otherwise provided or negated, in which
case, such specific periods of time or negation shall
govern), the Mortgagee shall have the right to declare the
entire indebtedness of the Mortgagor under the Note
forthwith due and payable.

(18)   that if there shall be any breach in any
condition or covenant of this Mortgage, the holder shall
have the right, but without any obligation so to do, to cure
such default for the account of the Mortgagor and, to the
full extent permissible according to law, apply any funds
credited by or due from the holder to the Mortgagor against
the same (without any obligations first to enforce any other
rights of the holder, including, without limitation, any
rights under the Note or this Mortgage, or any guarantee
thereof, and without prejudice to any such rights); without
limiting the generality of the foregoing, the Mortgagor
hereby authorizes the holder to pay all taxes, sewer use
fees, water rates and assessments, with interest, costs and
charges accrued thereon, which may at any time be a lien
upon the Property, or any part thereof; to pay the premium
for any insurance required hereunder; to incur and pay
reasonable expenses in protecting its rights hereunder and
the security hereby granted; to pay any balance due under
any Security Agreement on any articles, fixtures and
equipment included as a part of the Property; and the
payment of all amounts so incurred shall be secured hereby
as fully and effectually as any other obligation of the
Mortgagor secured hereby; and, to the full extent
permissible according to law, to apply to any of these
purposes or to the repayment of any amounts so paid by the
holder any sums paid on the Note or this Mortgage by the
Mortgagor as interest or otherwise; and

(19)   that, at any foreclosure sale, any combination,
or all, of the property or security given to secure the
indebtedness secured hereby, may be offered for sale for one
total price, and the proceeds of such sale accounted for in
one account without distinction between the items of
security or without assigning to them any proportion of such
proceeds, the Mortgagor hereby waiving the application of
any doctrine of marshalling; and, in case the holder, in the
exercise of the power of sale herein given, elects to sell
in parts or parcels, said sales may be held from time to
time, and the power shall not be fully executed until all of
the property or security not previously sold shall have been
sold; and

(20)   that, if the provisions of the Uniform Commercial
Code as adopted in Massachusetts are applicable to any
property or security given to secure the indebtedness
secured hereby which is sold in combination with or as a

part of the Property, or any part thereof, at one or more foreclosure sales, any notice required under such provisions shall be fully satisfied by the notice given in execution of the Statutory Power of Sale (referred to below) with respect to the Property or any part thereof; and

(21)  ADDITIONAL COVENANTS:

(A)    Without limiting the scope or effect of the other provisions of this Mortgage, to the extent that any of the Property is of a nature that a security interest therein may be perfected under the Uniform Commercial Code, as enacted in the Commonwealth of Massachusetts, this instrument shall, as of the date of execution hereof, constitute a security agreement, granting to the holder a security interest in the Property and Mortgage shall have the rights and remedies of a secured party under the Uniform Commercial Code, as enacted in Massachusetts, in addition to the other rights and remedies provided herein, and that this Mortgage is intended also to be a Financing Statement.

(B)    Without limiting the generality of the foregoing, the security interest created by this Mortgage shall cover cash and non-cash proceeds of the Property, together with all proceeds of insurance claims with respect to the Property or any part of such insurance claims, all leases and other contracts relating to the Property or any part(s) thereof, and all eminent domain awards arising from any taking of the Property, or any part(s) thereof.   Further, with respect to that portion of the Property which is subject to a security interest, the Mortgagor agrees with the holder as follows:

i)    Such portion shall continue to be free from all pledges, liens, encumbrances, assignments and security interests or other claims in favor of others, and the Mortgagor will warrant, and at the holder's request, defend the same from all claims and demands of all persons;

ii)   Such portion is to be located on the real estate which is included as part of the Property, of which Mortgagor is the record owner, and will not be removed therefrom without the prior written consent of the holder unless, upon such removal, similar items of equal or greater value are substituted or replaced; and

iii)  The Mortgagor shall not acquire any portion of the Property which is subject to a security interest for use on the Property except by purchase and payment in full; except as expressly permitted

412

by the holder in writing, no part of the Property shall be leased or rented.

(C)  The Mortgagor represents and warrants that he has not unlawfully "released" or caused an unlawful "threat of release" of any "hazardous materials" or "oils" (as such terms are defined in the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Chapter 21E of the Massachusetts General Laws) on the Property or on any other property in the Commonwealth of Massachusetts, whether or not owned by the Mortgagor.  Furthermore, the Mortgagor represents and warrants, and it shall be a further condition of this Mortgage:

1)  that the Mortgagor has not received and shall not receive notice from the Massachusetts Department of Environmental Protection or any other governmental authority claiming violation of such Act on the Property or elsewhere;

2)  that the Mortgagor has not incurred and will take all steps necessary  not to incur during the term of this Mortgagor any liability to the Commonwealth of Massachusetts under such Act on the Property or elsewhere;

3)  that the mortgagor has performed a thorough environmental study of the premises, and as best can be determined no predecessor in title to the Property committed any act on the Property or elsewhere which could give rise to a lien of the Commonwealth of Massachusetts under such Act;

4)  that no lien on the Property has arisen, and Mortgagor will take all necessary steps to assure that no lien will arise during the term of this Mortgage under such Act; and

5)  that no portion of the Property has been, or, during the term of this Mortgage, shall be used for the storage, treatment, use or disposal of any substance for which a license is required by Chapter 21C of the Massachusetts General Laws, viz. so-called hazardous wastes.

(D)  Without limitation of anything hereinabove stated, the Property shall be maintained and used in accordance with all applicable laws, rules, ordinances and regulations of all federal, state and municipal authorities, including without limitation, the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, the Federal Resource Conservation and Recovery Act, the Massachusetts Hazardous Waste Management Act, the Federal Water Pollution Control Act, the Federal Clean Air Act, the Massachusetts Wetlands Protection Act and the provisions of Chapter 92 and Chapter 21 of the Massachusetts General Laws governing connection to and use of sewer systems, insofar as

413

applicable. The Mortgagor further agrees to indemnify and hold the holder harmless from and against all liability and loss, cost, damage or expense, including attorneys' fees, which the holder may sustain by reason of any claimed or actual breach or violation of any such laws, rules, ordinances and regulations. Further, the holder shall have the right, but not the obligation, to enter upon the Property and expend funds to cure any default of the Mortgagor under or with respect to any such laws, rules, ordinances and regulations, and the Mortgagor will promptly repay to holder upon demand any such expense thereby incurred, the repayment of such expenses to be secured hereby as fully and effectually as any other obligation of the Mortgagor hereby secured. The Mortgagor's liability under this section shall survive transfer of the property by the mortgagor and foreclosure of this mortgage.

(E)  that during the term of this Mortgage, within 90 days after expiration of the undersigned's fiscal year, the undersigned shall deliver to the holder, personal financial statements for himself, and semi-annual consolidated balance sheet and income statement for the Crestview Managment Trust and the Crestview Health Care Facility, Inc.

The word "Mortgagor", as used herein, shall mean the person or persons named at the beginning of this instrument as the Mortgagor, and any subsequent owner or owners of the equity of redemption of the Property. Where more than one person constitutes the Mortgagor, provisions in this Mortgage with reference to bankruptcy or insolvency or the like shall refer to each of the persons who is at that time one of the Mortgagor, so that if, for example, but without limitation, any person who is one of the Mortgagor shall file a petition in bankruptcy, such filing shall be treated as a breach of condition of this Mortgage.

The word "holder", as used herein, shall mean the Mortgagee named at the beginning of this instrument, and any subsequent holder or holders of this Mortgage.

All the covenants and agreements of the Mortgagor herein contained shall be binding upon the Mortgagor and the heirs, executors, administrators, successors and assigns of the Mortgagor; and, where more than one person constitutes the Mortgagor, the liability of such persons under this Mortgage for the obligations set forth herein shall be joint and several.
This Mortgage is upon the STATUTORY CONDITION and upon the further condition that all covenants and agreements on the part of the Mortgagor herein undertaken shall be kept and fully and seasonably performed and that no breach of any other of the conditions specified herein shall be permitted, for any breach of which conditions, the holders shall have the STATUTORY POWER OF SALE.

414

EXECUTED as a sealed instrument this 3rd of November, 1992.

_____
Joel K. Logan, Trustee of
Crestview Management Trust

_____
Joel K. Logan

_____
Mary Ellen Logan

COMMONWEALTH OF MASSACHUSETTS

Norfolk County,  ss:                          November 3 1992

Then personally  appeared Joel  K. Logan,  Trustee,  as
aforesaid  and  individually  and   Mary  Ellen  Logan   and
acknowledged the foregoing instrument to be his free act and
deed before me.

_____
Notary Public

WILLIAM J. McNULTY, JR.
Notary Public
My Commission Expires May 2, 1997

**415**

EXHIBIT "A"

Parcel One

A certain parcel of land with the buildings thereon situated in Quincy, Norfolk County, Massachusetts bounded and described as follows:

| | |
|---|---|
| SOUTHERLY | on Greenleaf Street, 130 feet; |
| EASTERLY | on land now or formerly of Southworth, 145 feet; |
| NORTHERLY | on land now or formerly of Henry T. Gallagher et ux, 60 feet; |
| WESTERLY | on land now or formerly of said Gallagher 5 feet; and again |
| NORTHERLY | on land now or formerly of said Gallagher 70 feet; and again |
| WESTERLY | on Putnam Street, 140 feet. |

Containing 18,500 square feet of land by any or all of said measurements or contents more or less.

For title see Norfolk Deeds in Book 6610, Page 371.

Address of property:  86 Greenleaf Street, Quincy, MA.

Parcel Two

A certain parcel of land in Norwell, Plymouth County, Massachusetts together with the improvements thereon known and numbered as Lot 3 on a Plan entitled "Plan of Land, Main Street, Norwell, Massachusetts, Prepared for Lanata Family Trust" dated February 1, 1985, by Perkins Engineering, Inc., which plan is recorded with Plymouth County Registry of Deeds in Plan Book 25, Page 656, which lot is located on the northern side of Main Street in Norwell and which lot is more particularly bounded and described as follows:

Beginning at a point on the northern side of Main Street which point is the southwest corner of the premises herein described:

Thence running by Lot 2 North 24  31' 05" West 51.14 feet;
Thence turning and running again by Lot 2 North 16   05' 17" East 387.41 feet;
Thence turning and running again by Lot 2 North 54  14' 37" East 106.97 feet;
Thence turning and running again by Lot 2 North 16  30' 00" West 115.79 feet;
Thence turning and running again by Lot 2 North 35  33' 00" East 287.91 feet;

416

Thence turning and running again by Lot 2 North 03 12' 40"
     East 185.00 feet;
Thence turning and running again by Lot 2 South 86 47' 20"
     East 40.00 feet;
Thence turning and running again by Lot 2 North 03 12' 40"
     East 233.37 feet;
Thence turning and running by Lot 1 as shown on said plan
     South 73 57' 40" East 82.04 feet;
Thence turning and running again by Lot 1 North 03 12' 40"
     East 104.91 feet;
Thence turning and running again by said portion of Lot 1
     designated as "Easement for Lot 3's Benefit"
     South 85 48' 27" East 203.68 feet;
Thence turning and running again by that portion of Lot 1
     shown as "Easement for Lot 3's Benefit" North
     02 39' 50" East 749.20 feet;
Thence turning and running again by that portion of Lot 1
     shown as "Easement for Lot 3's Benefit" North
     02 47' 43" East 97.98 feet;
Thence turning and running again by that portion of Lot 1
     shown as "Easement for Lot 3's Benefit" North
     77 34' 10" East 369.18 feet;
Thence turning and running again by that portion of Lot 1
     shown as "Easement for Lot 2's Benefit" North
     09 48' 22" East 313.22 feet;
Thence turning and running again by that portion of Lot 1
     shown as "Easement for Lot 3's Benefit" North
     02 47' 43" East 97.98 feet;
Thence turning and running again by that portion of Lot 1
     shown as Easement for Lot 3's Benefit" North
     24 31' 03" West 51.13 feet;
Thence turning and running by Main Street South 77 34' 10"
     West 158.54 feet to the point of beginning.

Containing 7.32 acres according to said plan.

Lot 3 is conveyed together with the benefit of the following
easements:

1. The perpetual right and easement to the exclusive use of
that portion of Lot 1 designated "Easement for Lot 3's
Benefit" for the purpose of agriculture, landscaping and
recreational use. Nothing herein contained will prevent the
owner of Lot 1 from utilizing the area subject to the
easement for the purpose of maintaining a septic system, but
the owner of Lot 1 will make no other change in the existing
condition of the easement area, except such as are
consistent with the agriculture, landscaping and
recreational uses granted to Lot 3.

2. The perpetual right and easement to use the right of way
leading from Lot 1 to Main Street for all purposes for which
streets and ways may now or hereafter be used in the Town of
Norwell including the right to install utility lines and to

9592

417

utilize those utility lines which are or may herafter be installed in said right of way.

3. The exclusive right and easement to use that portion of Lot 1 shown as "Easement for Lot 3's Benefit" for the purpose of agriculture, landscaping and recreational use, but the owner of Lot 1 will make no other change in the existing condition of the easement are, except such as are consistent with agriculture, landscaping and recreational uses granted to Lot 3.

4. Lot 3 is subject to the "Right of Way" for the benefit of Lots 1 and 2.

Lot 3 is convyed subject to and together with the benefit of a restriction that none of the land shown on the plan as Lots 1, 2 and 3 will be used for any purpose other than for a single family home.

Property address: 1035 Main Street, Norwell, MA 02061.

Parcel Two is subject to a mortgage to South Weymouth Savings Bank dated August 6, 1986 recorded with Plymouth Deeds Book 7007, Page 317.

Parcel Two is also subject to South Weymouth Savings Bank dated March 8, 1988 recorded with Plymouth Deeds Book 8323, Page 71.

BK 12606 PG499

*10*

**88956**

3

Property Address: 86 Greenleaf Street, Quincy, MA

MODIFICATION AGREEMENT
AND
AMENDMENT TO MORTGAGE



RECORDED
NORFOLK COUNTY REGISTRY OF DEEDS
BOOK          DEDHAM, MA
ATTEST           PAGE

BARRY T. HANNON, REGISTER

98 JUN 25 PM12: 12
RECEIVED
NORFOLK COUNTY

THIS MODIFICATION AGREEMENT AND AMENDMENT TO MORTGAGE is entered into as of June 24, 1998, by and between **JOEL K. LOGAN, TRUSTEE CRESTVIEW MANAGEMENT TRUST,** under Declaration of Trust dated February 28, 1985 and recorded at the Norfolk Registry of Deeds in Book 6610, Page 363 (hereinafter referred to as "Crestview Management Trust"), and **SOUTH SHORE SAVINGS BANK,** successor by merger to South Weymouth Savings Bank (hereinafter called "Lender") a Massachusetts banking corporation having a usual place of business at 1530 Main Street, Weymouth, Massachusetts.

WHEREAS, Crestview Management Trust is the owner of the property known as 86 Greenleaf Street, Quincy, Massachusetts and as more fully described in the Deed recorded with the Norfolk Registry of Deeds at Book 6610, Page 371; and

WHEREAS, Lender is the holder of a mortgage of said premises dated November 3, 1992, as security for the payment of a note in the original principal amount of $605,000.00 and recorded with Norfolk Registry Deeds in Book 9592, Page 403; and

WHEREAS, the parties desire to modify the term of said Note and amend said Mortgage:

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby amend said Note and Mortgage as follows:

1. The term of the Mortgage shall be extended to be due and payable on or before June 24, 2008.

2. In addition to the mortgage and other security held by Lender, the note is secured by an Assignment of Leases dated June 24, 1998 and recorded at the Norfolk Registry of Deeds herewith.

3. Borrower hereby ratifies and confirms the provisions of said Mortgage and Assignment of Leases, and other documents executed and delivered incidental thereto, other than as modified herein and/or by the terms of a separate modification of note of even date herewith.

4. The parties hereto represent and agree that this modification does not change the description of the real estate as set forth in said mortgage.

Mail to:
South Shore Savings Bank
11 Front Street
Weymouth, MA 02188

BK 12606 PG 500

EXECUTED under seal this 24th day of June, 1998.

Joel K. Logan, Trustee

SOUTH SHORE SAVINGS BANK

By Peter T. Pastore, Jr.
Vice President and
Commercial Loan Officer

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                                June 24, 1998

Then personally appeared the above-named Joel K. Logan,
Trustee as aforesaid and acknowledged the foregoing instrument to
be his free act and deed, before me,

Notary Public
My commission expires:



OFFICIAL SEAL
WILLIAM J. McNULTY, JR.
NOTARY PUBLIC - MASSACHUSETTS
My Comm. Expires April 30, 2004

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.                                                June 24, 1998

Then personally appeared the above-named Peter T. Pastore,
Jr., Vice President and Commercial Loan Officer and acknowledged
the foregoing instrument to be the free act and deed of the South
Shore Savings Bank, before me,

Notary Public
My commission expires:

OFFICIAL SEAL
WILLIAM J. McNULTY, JR.
NOTARY PUBLIC - MASSACHUSETTS
My Comm. Expires April 30, 2004

# EXHIBIT E

418   4/

132637   /c-

## ASSIGNMENT OF RENTS AND OTHER RIGHTS

KNOW ALL MEN BY THESE PRESENTS that JOEL K. LOGAN, Trustee of Crestview Management Trust u/d/t dated February 28, 1985 recorded with Norfolk Deeds Book 6610, Page 363, of 593 Washington Street, Weymouth, Norfolk County, Massachusetts, hereinafter called the Assignor, for consideration paid by SOUTH WEYMOUTH SAVINGS BANK, a Massachusetts banking corporation havings its principal place of business at South Weymouth, Norfolk County, Massachusetts, hereinafter called the Assignee, the receipt whereof is hereby acknowledged, hereby grants, assigns, transfers and sets over unto the assignee all rents, profits, and other moneys due or to become due under the terms of a certain lease from Crestview Management Trust to Crestview Health Care Facility*or such other tenancy which may exist, covering property located at 86 Greenleaf Street, Quincy, Norfolk County, Massachusetts, and also all sums due to said Assignor by virtue of any use and occupancy of the aforenaid premises by the said lessees, tenants or their successors and assigns.

This assignment is made to secure the payment of the debt evidenced by a mortgage note dated November 3, 1992 in the original sum of $605,000.00, executed by the Assignor together with any renewals or replacements thereof, and also as security for the performance of all conditions, obligations, and covenants contained in said note, and in any other instrument given as security or assurance for said note.

In order to protect the security of this assignment, the Assignor covenants and agrees:

1. That the Assignor will not surrender or modify said leases nor permit them to be surrendered, or reduce the current schedule of rents unless the written approval of the Assignee is first obtained in each instance.

2. That the Assignor will not allow or accept, without the consent of the Assignee, any payment of rent more than thirty (30) days in anticipation of the payments and dates stipulated therefor in said leases.

3. That the Assignor will perform and observe all covenants and obligations to be performed by the lessor under the provisions of said leases, and that the Assignor will enforce the performance and observance of all conditions and covenants to be performed by the lessees thereunder.

419

And it is further agreed that nothing herein shall be construed to bind the Assignee to the performance of any of the covenants or agreements in said leases, nor to compel it to exercise any of the rights or powers herein granted, or otherwise to impose any obligations upon the Assignee except that it shall be accountable for all moneys actually received under this Assignment.

Upon any default in the terms of the aforesaid note or under this assignment or under any instrument given as security or assurance for said note, and the continuance of said default for a period of thirty (30) days, Assignee, at its option, may exercise all rights granted herein, and the Assignee may modify, alter, assign, or otherwise deal with said leases and tenants to the extent to which it might so do if it were the lessor thereof or the owner of the demised real estate; and the Assignor hereby irrevocably constitutes and appoints the Assignee as attorney for Assignor, to make such modifications, alterations, and assignments and also to assign and transfer any licenses or permits pertaining to the use or occupancy of the leased premises or any contracts or agreements held by the Assignor for water, heat, electricity, gas, and other services supplying the leased premises and all insurance policies affecting the same premises. And further in the event of a default as specified above and the continuance thereof for a period of thirty (30) days, the Assignee or its nominee may take such action and proceedings in its own name or in the name of said Assignor as said Assignee may deem desirable to collect any sums or enforce any rights to which it is or may become entitled by virtue of this Assignment and may give appropriate receipt; and no person dealing with said Assignee in reliance upon this instrument shall be required to see to the application of any moneys paid to, or inquire into the propriety of any action taken by the Assignee in said premises.

Wherever Assignor or Assignee are mentioned herein, it shall be deemed to include their respective heirs, successors, and assigns.

EXECUTED and SEALED this 3rd day of November, 1992.

SOUTH WEYMOUTH SAVINGS BANK

By _____    _____
                                 Joel K. Logan, Trustee
                                 as aforesaid, Assignor

420

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss                          November 3, 1992

Then personally appeared the above-named Joel K. Logan,
Trustee and acknowledged the foregoing instrument to be
their free act and deed as Trustee, before me,

_____
Notary Public
My Commission Expires: 5-2-97

WILLIAM J McNULTY, JR
Notary Public
My Commission Expires May 2, 1997

EXHIBIT F

| 4. ☐ Filed for record in the real estate records. | 5. ☐ Debtor is a Transmitting Utility. | 6. No. of Additional Sheets Presented: |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | 3. For Filing Officer (Date, Time, Number, and Filing Office) |
| Joel K. Logan, Trustee<br>Crestview Management Trust<br>593 Washington Street<br>Weymouth, Massachusetts | South Shore Savings Bank<br>1530 Main Street<br>Weymouth, MA 02190 | |

7. This financing statement covers the following types (or items) of property:

   All articles, fixtures, equipment, rents, issues, profits, insurance
contracts and proceeds and taking awards and rights, together with any and
all improvements now on such realty, or from time to time thereon, and any
additions thereto or replacements thereof, permits, plans, approvals, construction
or not incorporated into the premises, permits, plans, approvals, construction
contract rights are herein collectively referred to as the "Property".

Address of property:    86 Greenleaf Street, Quincy
Filed with:    Norfolk Registry of Deeds

RECEIVED
NORFOLK COUNTY
98 JUN 25 PM12: 12

Check ☒ If covered:    ☐ Proceeds of Collateral are also covered.    ☐ Products of Collateral are also covered.

Whichever is
Applicable
(See Instruction
Number 9)

Joel K. Logan, Trustee
Crestview Management Trust
Signature(s) of Debtor (Or Assignor)

SOUTH SHORE SAVINGS BANK
By
Signature(s) of Secured Party (Or Assignee)

Filing Officer Copy — Alphabetical
STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC-1    Rev. April 1997    Forms may be purchased from Hobbs & Warren, Inc., Boston, MA 02101

RECORDED
NORFOLK COUNTY REGISTRY OF DEEDS
DEDHAM, MA
BOOK
ATTEST    PAGE

BARRY T. HANNON, REGISTER

# EXHIBIT G

9592

132635                    /0-

402

## SUBORDINATION AGREEMENT

USTRUST/NORFOLK, now known as USTRUST, a Massachusetts corporation of Quincy, Norfolk County, Massachusetts, holder of a Mortgage and Assignment of Leases and Rents from Joel K. Logan, Trustee of Crestview Management Trust, dated September 23, 1988, and recorded with Norfolk Registry of Deeds at Book 8109, Page 278 ("Subordinated Mortgage") hereby subordinates all of its interest under said mortgage to a mortgage and Assignment of Rents from Joel K. Logan, Trustee of the Crestview Management Trust to South Weymouth Savings Bank, in the principal amount of $605,000.00, recorded at Norfolk Registry of Deeds herewith, to the same extent as if the mortgage dated September 23, 1988 had been executed and recorded subsequent to mortgage dated November 3 , 1992 and recorded herewith.

EXECUTED AND SEALED THIS 3rd  DAY OF November  , 1992.

                                        USTRUST

                                        By: *David M. Kilnapp*

### COMMONWEALTH OF MASSACHUSETTS

SUFFOLK,      ss                        November 3, 1992

Then personally appeared the above name David M. Kilnapp          , and acknowledged the foregoing instrument subscribed to be the free act and deed of USTrust before me.

                                        _____
                                        Notary Public
                                        My commission expires: 1/21/94

# EXHIBIT H

4        **134863**        BK 1 0 7 4 1 PG 5 4 6        *10*

### AMENDMENT TO CONDITIONAL ASSIGNMENT OF LEASES AND RENTS

This Amendment to Collateral or Conditional Assignment of Leases and Rents is made and entered into this 28th day of November, 1994 between Joel K. Logan, Trustee of Crestview Management Trust u/d/t dated February 28, 1985, which trust is recorded with Norfolk County Registry of Deeds in Book 6610, Page 363 ("Borrower") and USTrust, a Massachusetts trust company engaged in the business of banking, having a principal place of business at 30 Court Street, Boston, MA 02108 ("Bank").

Reference is made to a certain Conditional Assignment of Leases and Rents dated September 23, 1988 from the Borrower to Bank on, without limitation, certain property situated at 86 Greenleaf Street, Quincy, Massachusetts ("Premise), which Conditional Assignment of Leases and Rents is recorded in Norfolk County Registry of Deeds in Book 8109, Page 281 ("Collateral Assignment").

Reference is made to a certain promissory note dated September 23, 1988 in the original principal sum of $175,000.00 ("Principal Sum"), the maker of which is the Borrower and the payee and holder of which is Bank ("Note").

Reference is made to the Allonge to and Amendment of Promissory Note ("Allonge") dated November 28, 1994 between the Borrower and the payee which amends the Note.

Reference is made to a certain mortgage dated September 23, 1988 from the Borrower as mortgagor to Bank as mortgagee on, without limitation, the Premises, which mortgage is recorded in Norfolk County Registry of Deeds in Book 8109, Page 278 ("Mortgage").

Reference is made to the Loan Modification Agreement dated November 28, 1994 between, without limitation, the Borrower and Bank, which without limitation relates to the Note and Mortgage ("Loan Modification Agreement").

For valuable consideration, the Borrower and Bank hereby mutually agree for themselves and their successors and assigns as follows:

1. The Collateral Assignment is hereby amended by adding the following:

   (a)    The Note is the note or promissory note referred to in the Collateral Assignment, which Note is secured by the Collateral Assignment. The Allonge amends the Note, without limitation, by extending and/or establishing the maturity date of the Note to or at September 23, 1997, as well as by making other changes to the Note.

   (b)    The Note includes all amendments, decreases, extensions, increases, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions thereof, if any, in whole or in part, now existing and/or hereafter arising, including without limitation the Allonge.

   (c)    Any reference in the Collateral Assignment to the Mortgage, if at all, means the Mortgage, as amended by a certain Amendment to Mortgage dated the same date as this Amendment to Collateral or Conditional Assignment, to be recorded herewith, and includes all amendments, extensions, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions of the Mortgage, if any, in whole or in part, now existing and/or hereafter arising.

RECORDED
NORFOLK COUNTY REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY

*[signature]*

BARRY T. HANNON, REGISTER

BK 10741 PG547

(d)    The Collateral Assignment includes all amendments, extensions, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions thereof, if any, in whole or in part, now existing and/or hereafter arising.

(e)    In addition to the provisions contained in the Collateral Assignment, the Collateral Assignment secures, without limitation, the payment and performance (i) of all obligations under the Note, as amended by the Allonge, including without limitation, the Principal Sum, and all interest thereon; and (ii) of all obligations of the Borrower under the Loan Modification Agreement.

2.    Except as modified herein, the Collateral Assignment and all of the terms, provisions and conditions contained in the Collateral Assignment shall remain unchanged and in full force and effect, and the Borrower hereby ratifies, adopts, confirms and approves all of the terms, provisions and conditions contained in the Collateral Assignment as amended herein.

SIGNED as a sealed instrument.

BORROWER:
Crestview Management Trust
u/d/t dated February 28, 1985

By: _____
Joel K. Logan, Trustee

USTrust

By: _____
David M. Kilnapp, Vice-President

Page 2

BK 10741 PG548

**COMMONWEALTH OF MASSACHUSETTS**
NORFOLK,ss                                         November 28, 1994

Then personally appeared the above named Joel K. Logan, Trustee and acknowledged the foregoing instrument to be his free act and deed as Trustee and that of Crestview Management Trust, before me

Notary Public: James E. Clancy
My Commission Expires: 7/26/96

**COMMONWEALTH OF MASSACHUSETTS**
NORFOLK,ss                                         November 28, 1994

Then personally appeared the above named David M. Kilnapp, Vice-President and acknowledged the foregoing instrument to be his free act and deed as Vice-President and that of USTrust, before me

Notary Public: James E. Clancy
My Commission Expires: 7/26/96

Page 3

RECORDED
NORFOLK COUNTY REGISTRY OF DEEDS
DEDHAM, MA

BK 1 2 0 3 7 PG 2 1 0

CERTIFY

BARRY T H.

## AMENDMENT TO COLLATERAL OR CONDITIONAL ASSIGNMENT
## OF LEASES AND RENTS TO USTRUST

This Amendment of Collateral or Conditional Assignment of Leases and Rents is made and entered into this __26th__ day of __September__ , 19_97_ between _____
_____ Joel K. Logan, Trustee of Crestview Management Trust _____

("Assignor") and USTrust, if filled in then formerly known as The Co-Operative Bank of Concord, a Massachusetts trust company engaged in the business of banking, having an usual place of business at 30 Court Street, Boston, Massachusetts 02108 ("Bank").

Reference is made to certain promissory note(s) or other evidence of indebtedness dated ____September 23____
_____, 1988 in the original principal sum of $175,000.00 _____, the maker or borrower of which is _____ Joel K. Logan, Trustee of Crestview Management Trust _____
_____("Borrower"), payable to the Bank or order, as amended if at all ("Note"), and if filled in, reference is made to the guaranty or guarantees dated _____September 23_____, 1988___ to the Bank by _____Joel K. Logan and Mary Ellen Logan_____
_____
_____(collectively and each of them hereinafter called "Guarantor") of the obligations of the Borrower to the Bank    ("Guaranty").

Reference is made to a certain mortgage dated ___September 23_____, 19_88_____ from the Assignor as mortgagor to the Bank as mortgagee on, without limitation, certain property situated at 86 Greenleaf Street, Quincy, Massachusetts 02169 _____
_____,which mortgage is recorded in Norfolk County Registry of Deeds in Book 8109 ____
, Page 278[but if filled in then in the registered land department thereof as document number _____, noted on certficate of title number_____ in Book _____, Page _____], as amended if at all ("Mortgage").

Reference is made to the loan modification agreement of even date hereof between, without limitation, the Assignor and the Bank, which without limitation relates to the Note and Mortgage ("Loan Modification Agreement").

Reference is made to the allonge to and amendment of promissory note or other evidence of indebtedness ("Allonge") of even date hereof between the Borrower and the Bank, which amends the Note.

Reference is made to a certain collateral or conditional assignment of leases and rents dated ___September 23___
_____, 1988___ from the Assignor to the Bank on, without limitation, certain property situated at the mortgaged premises described in the Mortgage, which collateral or conditional assignment is recorded in _____Norfolk County____
_____Registry of Deeds in Book ____8109___, Page __281_____[but if filled in then in the registered land department thereof as document number _____, noted on certficate of title number _____
_____in Book _____, Page _____], as amended if at all ("Collateral Assignment").

For valuable consideration, the Assignor and the Bank hereby mutually agree for themselves and their successors and assigns as follows:

1.      The Collateral Assignment is hereby amended by adding the following:

(a).    The Allonge amends the Note, without limitation, by extending, changing and/or establishing the maturity date of the Note to or at ____August 23, 2002 _____, unless sooner due or declared due under any of the provisions contained in the Note or Mortgage, as well as by making other changes to the Note.

(b).    The Note includes all amendments, decreases, extensions, increases, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions thereof, if any, in whole or in part, now existing and/or hereafter arising, including without limitation the Allonge.

(c).    The Assignor agrees that any collateral assignment of leases and rents and/or other collateral, if any, which secures the Note and/or, if any, the Guaranty, including without limitation the Collateral Assignment, secures

97 OCT 16 PM 12:40

RECEIVED
RECORDED
NORFOLK COUNTY

1

BK12037PG21

as well all amendments, decreases, extensions, increases, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions of the Note, including without limiation the Allonge and/or, if any, the Guaranty, in whole or in part, now existing and/or hereafter arising.

(d).    The Collateral Assignment includes all amendments, extensions, modifications, renegotiations, renewals, replacements, revisions, rewritings and/or substitutions thereof, if any, in whole or in part, now existing and/or hereafter arising.

(e).    In addition to the provisions contained in the Collateral Assignment, the Assignor agrees that (I) it shall be a default and/or event of default under the Collateral Assignment, without limitation, in the event a default hereafter arises by the Assignor under the Loan Modification Agreement or any exhibit thereto; and (ii) the Collateral Assignment secures all obligations of the Assignor under the Loan Modification Agreement.

(f).    Except as modified herein and/or previously modified by written instrument signed by both the Assignor and the Bank, if at all, the Collateral Assignment and all of the terms, provisions and conditions contained in the Collateral Assignment shall remain unchanged and in full force and effect, and the Assignor hereby ratifies, adopts, confirms and approves all of the terms, provisions and conditions contained in the Collateral Assignment as amended herein and/or previously modified by written instrument executed and delivered in connection herewith shall in any way impair or release the continued perfection and priority of the collateral assignment lien and security interest granted to the Bank under the Collateral Assignment.

SIGNED as a sealed instrument.

USTRUST

By: _Denise Carlsson_
Denise Carlsson        Loan Officer
Print name             Title

ASSIGNOR:
Joel K. Logan, Trustee of Crestview Management Trust
(Name of entity, if any)

By: _Joel K. Logan_            _President_
Joel K. Logan, Trustee         Title, if applicable
Print name

_____
(Name of entity, if any)
By:_____
Print name             Title

_Norfolk_____, ss.          COMMONWEALTH OF MASSACHUSETTS _Oct 6_, 19_97_
Then personally appeared before me the above named _Joel K. Logan_
_____ and acknowledged the foregoing instrument to be
free act and deed(and that of any entity named).

_____
Notary Public

Print Name          KENNETH M. LOGAN JR.
                    MY COMMISSION EXPIRES 3/30/2001
_____
Date commission expires

SEAL

_Suffolk_____, ss.          COMMONWEALTH OF MASSACHUSETTS _Oct 6_, 19_97_
Then personally appeared before me the above named _Denise Carlsson_
_Loan Officer_____, of USTrust and acknowledged the foregoing instrument to be_ _her_
free act and deed and that of USTrust.

_Camille E. Ostman_
Notary Public  CAMILLE E. OSTMAN, Notary Public
               My Commission Expires July 3, 2003

U.S.A.

# EXHIBIT I

Bk 22218 Pg414 #35252
03-28-2005 @ 10:19a

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY

*William P O'Donnell*

WILLIAM P. O'DONNELL, REGISTER

## DISCHARGE OF MORTGAGE

For Value Received Citizens Bank of Massachusetts successor by merger to USTrust holder of a

Mortgage from Joel K. Logan as Trustee of Crestview Management Trust, to USTrust, acknowledged on

September 23, 1988 and recorded with Norfolk County Registry of Deeds in the state of Massachusetts, at

Book 8109 Page 278, as amended if at all hereby discharges and releases any rights or interests it may

have by virtue of said Mortgage instrument.

Dated this 9th day of March 2005

Citizens Bank of Massachusetts

By: *Debbie Chesson*                    (Witness) *Michele Robicheau*
Debbie Chesson                                              Michele Robicheau
Its Duly Authorized Officer

Property Location:
86 Greenleaf Street, Quincy, Massachusetts

Commonwealth of Massachusetts
County of Middlesex, SS:

On this 9th day of March 2005, before me personally came Debbie Chesson, Loan Operations Officer of
Citizens Bank of Massachusetts to me known who, being by me duly sworn, did depose and say that she is
a Duly Authorized officer of Citizens Bank of Massachusetts described in and which executed the
foregoing instrument; and that she has signed her name to said instrument.

NOTARY PUBLIC

*Isabelle R. Ruggiero*   My Commission Expires September 11, 2009

Isabelle R. Ruggiero

ISABELLE R. RUGGIERO
Notary Public
Commonwealth of Massachusetts
My Commission Expires

# EXHIBIT J

## DISCHARGE OF REAL ESTATE ATTACHMENT

To the Register of Deeds for Norfolk County, Commonwealth of Massachusetts:

The attachment of the real estate of N.E. Health Ltd. Partnership, Mark S. Logan and Joel K. Logan for any and all real estate located in Norfolk County, Massachusetts to the value of $56,000.00, made on the 5th day of February, 1997, in Civil Action No. 9660CV0374, in the Wareham District Court (Massachusetts), by Cirelli Foods, Inc., and recorded in the Norfolk County Registry of Deeds in Book 11694, Page 28, is hereby discharged.

Executed as a sealed instrument this 7 day of January , 20 05

CIRELLI FOODS, INC.

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

CERTIFY

William P. O'Donnell

WILLIAM P. O'DONNELL, REGISTER

By: _John Kelleher_

John Kelleher, Secretary
duly authorized

### COMMONWEALTH OF MASSACHUSETTS

Bristol , ss.

On this 7 day of January, 2005, before me, the undersigned notary public, personally appeared John Kelleher, proved to me through satisfactory evidence of identification, which was personally known to me , to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose as Secretary of Cirelli Foods, Inc.

_Laura J. St. Martin_
NOTARY PUBLIC
Printed Name: Laura J. St. Martin
My Commission Expires: 6-23-06

*[Affix Notarial Seal]*

LAURA J. ST. MARTIN
Notary Public
Commonwealth of Massachusetts
My Commission Expires
June 23, 2006

Bern Kopf
Todd Goldberg
125 Summer St.
Ste 1300
Boston MA 02110-1621