UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

South Shore Savings Bank, Successor By
Merger to South Weymouth Savings Bank,

        Plaintiff

VS.

Joel K. Logan, Indiviually and as Trustee of
Crestview Management Trust; Mary Ellen
Logan, Individually and as Trustee of
Crestview Management Trust; Massachusetts
Department of Revenue; J. Glabb, LLC as
Assignee of King David Trust; Cirelli Foods,
Inc.; Internal Revenue Service, Jonathan
Bashein as Assignee of Nixon Peabody, LLP;
Robert J. Griffin, Esq.; The Commonwealth of
Massachusetts; The Commonwealth of
Massachusetts by its Department of Public
Health; Healthcare Capital Resources, Inc., and
HCFP Funding, Inc., Successor in Interest to
Health Partners Funding, L.,

        Defendants

CIVIL ACTION
NO. 05-11754 RGS

**AFFIDAVIT OF ROBERT J. GRIFFIN**

I, Robert J. Griffin, hereby depose and state as follows:

(1)     On June 6, 2003, the Attorney General of the Commonwealth, with the

Massachusetts Department of Public Health, filed an action (the "Receivership Action")[1]

pursuant to the Patient Protector Receivership Act, G.L. c. 111, §§72M-72U, seeking

appointment of a temporary receiver to preserve the health, safety and well-being of the residents

---

[1] Thomas F. Reilly, Attorney General of the Commonwealth of Massachusetts, et al, vs. Logan
Healthcare Facility, et al, Suffolk Superior Court Civil Action No. 03-2696A.

of four nursing home facilities[2] (the "Facilities") owned and/or controlled by the Defendant Joel K. Logan and/or various members of his family and/or entities that members of the Logan family owned or controlled. The Complaint alleged failures of patient care, "gross financial mismanagement" and serious financial and other improprieties and abuses which subjected the Facilities to risk of abandonment by staff, who were not being paid, and/or regulatory shutdown. These conditions were alleged to have created an "imminent danger of death or serious physical harm to elderly residents and patients." A true and accurate copy of the Complaint is attached hereto as Exhibit A.

(2)     On June 6, 2003, after a day of evidentiary hearing, the Suffolk Superior Court granted the Attorney General's petition and entered an order (the "Appointing Order") appointing me as temporary receiver ("Receiver") for the Facilities.   The Appointing Order charged the Receiver to (a) protect the immediate health and safety of the residents by ensuring that they receive the care they need; (b) protect the longer-term health and safety of the residents by taking measures to ensure that Facilities remain able to meet their tax and insurance obligations and are not abandoned by staff or closed by regulatory action; and/or (c) if necessary, ensure the implementation of an orderly and safe transfer and residents and closure of the Facilities within the next two months. A true and accurate copy of the Appointing Order is attached hereto as Exhibit B.

---

[2] The Facilities initially under Receivership were (1) Logan Healthcare Facility, Inc., d/b/a Logan Nursing and Rehabilitation Center ("Logan"); (2) Elihu White Nursing Home, Inc. d/b/a Elihu White Nursing and Rehabilitation Center ("Elihu White"); (3) Pond Meadow Healthcare Facility, Inc., d/b/a Pond Meadow Healthcare Facility ("Pond Meadow") and (4) Atrium Healthcare Facility, LLC, d/b/a Atrium Nursing Center ("Atrium").  By Order dated July 2, 2004, Crestview Healthcare Facility, Inc. was also put into receivership.  (See Griffin Aff., Exs. B and D.)

(3)     That same day, the Court also entered an order barring all Defendants from "transferring, pledging, selling, mortgaging, encumbering, or in any way disposing of ownership or custody of any real or personal assets the Defendants may own or control . . ." A true and accurate copy of this order is attached hereto as Exhibit C.

(4)     The Attorney General subsequently moved for the appointment of a receiver over Crestview Healthcare Facility, Inc., which the Court allowed on July 2, 2004. A true and accurate copy of this Order is attached hereto as Exhibit D.

(5)     Additionally, on that date, the Court issued two additional writs of attachment against Mary Ellen Logan in the amount of $250,000 (recorded on July 7, 2004) and Crestview Management Trust in the amount of $250,000 (recorded on July 8, 2004).  True and accurate copies of these writs are attached hereto as Exhibits E and F.

(6)     On July 9, 2004, pursuant to M.G.L. c. 111, §72Q, executed a notice of lien on behalf of the Commonwealth of Massachusetts upon the property at 86 Greenleaf Street, Quincy, Massachusetts (the "Property") in an amout equal to the cost of the Receivership as approved by the Superior Court and other permissible costs, which Notice of Lien was recorded on July 12, 2004.  A true and accurate copy of the Notice of Lien is attached hereto as Exhibit G.

(7)     As Receiver, I answered the Complaint asserting a claim to the Surplus Proceeds based on the Notice of Lien.  The Attorney General of the Commonwealth and the Massachusetts Department of Public Health have also asserted claims to the Surplus Proceeds.

Subscribed and sworn under the penalties of perjury this __11__ day of September 2005

_____
Robert J. Griffin

2043\0006\155538.1

**EXHIBIT A**

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
C.A. NO.

THOMAS F. REILLY, ATTORNEY GENERAL
OF THE COMMONWEALTH OF MASSACHUSETTS )

and

THE COMMONWEALTH OF MASSACHUSETTS
BY ITS DEPARTMENT OF PUBLIC HEALTH,

     Plaintiff-Petitioners

v.

LOGAN HEALTHCARE FACILITY, INC.,
LOGAN HEALTHCARE REALTY, LLC,
ELIHU WHITE NURSING HOME, INC.,
ELIHU WHITE REALTY, LLC,
CRESTVIEW HEALTHCARE FACILITY, INC.,
CRESTVIEW MANAGEMENT TRUST,
POND MEADOW HEALTHCARE FACILITY, INC.,
POND MEADOW REALTY, LLC,
ATRIUM HEALTHCARE FACILITY, LLC,
ATRIUM NURSING CENTER LIMITED
LOGAN HEALTHCARE MANAGEMENT
GROUP, INC.,
JOEL K. LOGAN,
FLORENCE E. LOGAN,
MARK S. LOGAN,
MARY ELLEN LOGAN,
TODD S. LOGAN,
ARTHUR LOGAN
KENNETH M. LOGAN, JR., and
GREGORY LOGAN, ADMINISTRATOR,

     Defendant-Respondents.

03-2696 -A

RECEIVED
JUN 06 2003
SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
FOR CIVIL BUSINESS

COMMPLAINT AND PETITION FOR THE
APPOINTMENT OF A TEMPORARY RECEIVER

## I. STATEMENT OF THE CASE

1.     Thomas F. Reilly, the Attorney General of the Commonwealth of Massachusetts, and the Commonwealth, by its Department of Public Health (jointly the "Commonwealth"), petition this Court pursuant to G.L. c.111, §72M for the appointment of a receiver to protect the residents of four Massachusetts nursing home facilities.  The Commonwealth asserts that an "emergency" exists, within the meaning of G.L. c. 111, §72M, and that conditions exist which present an imminent danger of death or serious bodily harm to the 349 residents of the four facilities.

2.     The four nursing homes are the Logan Healthcare Facility, Inc., Elihu White Nursing Home, Inc., Pond Meadow Healthcare Facility, Inc. and Atrium Healthcare Facility, LLC (collectively, the "Logan Facilities"), which are owned by members of the Logan family, as described in more detail below.

3.     An emergency exists that necessitates the immediate appointment of a Temporary Receiver over each of the Logan Facilities.  There is imminent danger that each of the Logan Facilities will be abandoned by its staff and/or shut down by regulatory authorities with little or no notice because of Defendants' gross financial mismanagement. The owners of the Logan Facilities have grossly mismanaged the financial operations of these facilities by, among other things, failing to pay: (a) workers compensation insurance for their employees, causing the Division of Industrial Accidents ("DIA") to issue Stop Work Orders requiring the immediate closure of the four Logan Facilities unless a receiver is appointed; (b) at least $6 million (and possibly as much as $12.5 million) in employee withholding taxes, causing the Internal Revenue

2

Service ("IRS") to levy upon tax liens which froze the bank account(s) covering at least three of the facilities. On May 30, 2003, the three facilities were unable to make payroll, and staff threatened to walk out, until the IRS agreed to release a levy on the payroll account. The levy was released by the IRS based on assurances from the Department of Public Health that the Commonwealth would seek the appointment of a receiver; and (c) health insurance premiums for their employees, even though employee contributions were being deducted from their pay checks, causing certain health plans to terminate coverage.

4.     If the Logan Facilities are abandoned by their staff and/or shut down by order of regulatory authorities – which could happen as soon as June 6, 2003 – it will have a devastating impact on the health and safety of approximately 349 sick and elderly residents and patients, presenting an imminent danger of death or serious physical harm to these residents and patients.

5.     A receiver is necessary: (a) to protect the immediate health and safety of the residents by ensuring that they receive the care they need, (b) protect the longer-term health and safety of the residents by taking measures to ensure that the facilities remain able to meet their tax and insurance obligations, and are not abandoned by staff or closed by regulatory action, and/or (c) if necessary, to ensure the implementation of orderly and safe closures of the facilities and patient transfers within the next two months. For these reasons, the Commonwealth seeks an order from this Court pursuant to the Commonwealth's Patient Protection Receivership Statute, G.L. c.111, §72M. et seq., immediately appointing a receiver over each of the Logan Facilities.

6.     The Commonwealth is also seeking to immediately enjoin the owners, officers, directors and administrators of the Logan Facilities, and related entities, from transferring any of their assets, as well as real estate attachments, to protect and preserve the facilities' assets for the

Receiver's operation of the facilities and/or orderly closure and transfer of patients, and to secure the judgment which the Commonwealth expects to recover.

7.    After a trial on the merits, the Attorney General will seek to recover from the defendants the costs of prosecuting this action, including reasonable attorneys' fees, the costs of this receivership, and penalties. The Attorney General will also seek to enjoin certain defendants from owning and/or operating a long-term care facility in Massachusetts for a reasonable period of time.

## II. JURISDICTION

8.    Jurisdiction is conferred upon this Court by G.L. c.12, §10 and G.L. c. 111, §72N, G.L. c. 111, §72K and G.L. c.93A, §4.

## III. VENUE

9.    Venue is proper pursuant to G.L. c. 223, §5 and G.L. c. 93A, §4.

## IV. PARTIES

10.    Thomas F. Reilly is the Attorney General of the Commonwealth of Massachusetts. Pursuant to G.L. c.111, §72N, the Attorney General is authorized to bring an action requesting the appointment of a receiver to operate a long term care facility as defined by G.L. c. 111, §71, whenever grounds for receivership exists, as set forth in G.L. c. 111, §72M. The Attorney General is also authorized to seek civil penalties pursuant to G.L. c. 93A, §4, and G.L. c. 111, §72K.

11.    The Massachusetts Department of Public Health (the "Department" or "DPH"), is the state agency responsible for performing the function of certification required under 42 C.F.R. 442.100 et seq. and related state and federal laws as a precondition of participation and continued

4

operation as a provider in the State Medical Assistance Program (Medicaid) administered by the Division of Medical Assistance. The Department is also responsible for the enforcement of G.L. c. 111, §§71-73, the Long Term Care Facility Licensing Regulations found in 105 CMR 150.000, and the Licensure Procedure and Suitability Requirements for Long Term Care Facilities found in 105 CMR 153.000. Under these statutes and regulations, the Department is responsible for licensing long term care facilities and for finding licensees suitable to establish or maintain such facilities. Pursuant to G.L. c. 111, §72N, the Department is also authorized to bring an action requesting appointment of a receiver whenever an emergency exists within the meaning of G. L. c.111, §72M.

12.    Logan Healthcare Facility, Inc. ("Logan Healthcare") is a corporation with a principal place of business at 861 Main Street, Weymouth, Massachusetts. Logan Healthcare is the holder of a license issued by DPH to operate the Logan Nursing & Rehabilitation Center, a 82-bed long term care facility located at 175 Grove Street, Braintree, Massachusetts.

13.    Logan Healthcare Realty, LLC ("Logan Realty") is a limited liability company with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Logan Realty is the owner of the real estate known as 175 Grove Street, Braintree, Massachusetts.

14.    Elihu White Nursing Home, Inc. ("Elihu Healthcare") is a corporation with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Elihu Healthcare is the holder of a license issued by DPH to operate the Elihu White Nursing & Rehabilitation Center, a 204-bed long term care facility located at 95 Commercial Street, Braintree, Massachusetts.

15.    Elihu White Realty, LLC ("Elihu Realty") is a limited liability company with a

principal place of business at 593 Washington Street, Weymouth, Massachusetts. Elihu Realty is the owner of the real estate known as 95 Commercial Street, Braintree, Massachusetts.

16.     Crestview Healthcare Facility, Inc. ("Crestview Healthcare") is a corporation with a principal place of business at 86 Greenleaf Street, Quincy, Massachusetts. Crestview Healthcare is the holder of a license issued by DPH to operate the Crestview Healthcare Facility, a 50-bed long term care facility located at 86 Greenleaf Street, Quincy, Massachusetts.

17.     Crestview Management Trust ("Crestview Realty") is a trust with a principal place of business at 86 Greenleaf Street, Quincy, Massachusetts. Crestview Realty is the owner of the real estate known as 86 Greenleaf Street, Quincy, Massachusetts.

18.     Pond Meadow Healthcare Facility, Inc. ("Pond Meadow Healthcare") is a corporation with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Pond Meadow Healthcare is the holder of a license issued by DPH to operate the Pond Meadow Healthcare Facility, a 91-bed long term care facility located at 188 Summer Street, Weymouth, Massachusetts.

19.     Pond Meadow Realty, LLC ("Pond Meadow Realty") is a limited liability company with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Pond Meadow Realty is the owner of the real estate known as 188 Summer Street, Weymouth, Massachusetts.

20.     Atrium Healthcare Facility, LLC ("Atrium Healthcare") is a limited liability company with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Atrium Healthcare is the holder of a license issued by DPH to operate the Atrium Nursing & Rehabilitation Center, a 90-bed long term care facility located at 314 Marion Road,

6

Middleboro, Massachusetts.

21.    Atrium Nursing Center Limited ("Atrium Realty") is the owner of the real estate known as 314 Marion Road, Middleboro, Massachusetts.

22.    Logan Healthcare Management Group, Inc. ("Logan Management") is a corporation with a principal place of business at 593 Washington Street, Weymouth, Massachusetts. Logan Management manages all of the Logan Facilities except Elihu Healthcare.

23.    Joel K. Logan ("Joel") is an individual who resides at 1035 Main Street, Norwell, Massachusetts. The Department's records reflect that Joel holds ownership interests in certain of the Logan Facilities as follows: 25% Logan Healthcare and 51% Crestview Healthcare. The Department's records reflect that Joel is the licensed Nursing Home Administrator for Crestview Healthcare. Joel is also an officer of Logan Healthcare, Elihu Healthcare, Crestview Healthcare, Pond Meadow Healthcare and of Logan Management. Joel is a licensee of Logan Healthcare, Elihu Healthcare, Crestview Healthcare, and Pond Meadow Healthcare by virtue of his ownership interests and/or his status as an officer.

24.    Florence E. Logan ("Florence") is an individual who resides at 15 Logan Drive, Braintree, Massachusetts. The Department's records reflect that Florence holds ownership interests in certain of the Logan Facilities as follows: 25% Logan Healthcare, 100% Elihu Healthcare and 100% Pond Meadow Healthcare. Florence is also an officer of Elihu Healthcare and Pond Meadow Healthcare. Florence is a licensee of Logan Healthcare, Elihu Healthcare and Pond Meadow Healthcare by virtue of her ownership interests and/or her status as an officer.

25.    Mark S. Logan ("Mark") is an individual who resides at 15 Logan Drive, Braintree, Massachusetts. The Department's records reflect that Mark holds ownership interests in certain

7

of the Logan Facilities as follows: 25% Logan Healthcare.    Mark is also an officer of Logan Healthcare and Logan Management.  Mark is a licensee of Logan Healthcare by virtue of his ownership interests and/or his status as an officer.

26.    Mary Ellen Logan ("Mary") is an individual who resides at 1035 Main Street, Norwell, Massachusetts.  The Department's records reflect that Mary holds ownership interests in certain of the Logan Facilities as follows: 49% Crestview Healthcare.  Mary is also an officer of Crestview Healthcare.  Mary is a licensee of Crestview Healthcare by virtue of her ownership interest and/or her status as an officer.

27.    Todd S. Logan ("Todd") is an individual who resides at 10 Marinelli Court, Braintree, Massachusetts.  The Department's records reflect that Todd holds ownership interests in certain of the Logan Facilities as follows: 25% Logan Healthcare and 99% Atrium Healthcare. Todd is also an officer of Logan Healthcare and Logan Management.  Todd is a licensee of Logan Healthcare and Atrium Healthcare by virtue of his ownership interests and/or his status as an officer.

28.    Arthur Logan ("Arthur") is an individual who resides at 30 Greenfield Lane, Scituate, Massachusetts.  The Department's records reflect that Arthur is an officer of Elihu Healthcare.  Arthur is a licensee of Elihu Healthcare by virtue of his status as an officer.

29.    Kenneth M. Logan, Jr. ("Kenneth") is an individual who resides at 40 Holly Road, Braintree, Massachusetts.  The Department's records reflect that Kenneth is a director of Elihu Healthcare and Atrium Healthcare.  Kenneth is a licensee of Elihu Healthcare and Atrium Healthcare by virtue of his status as a director.  Kenneth is the licensed Nursing Home Administrator for Atrium Healthcare.

8

30.    Joel, Florence, Mark, Mary, Todd, Arthur and Kenneth are hereinafter collectively referred to as the "Licensees."

31.    Gregory Logan ("Gregory") is an individual who resides at 2 Centennial Park, Kingston, Massachusetts. The Department's records reflect that Gregory is the licensed Nursing Home Administrator for Logan Healthcare.

## IV.   STATEMENT OF FACTS

32.    The Logan Facilities are licenced by the Department to operate the long term care facilities within the meaning of G.L. c. 111, § 71.

33.    The Department has been informed that there are 349 residents currently living at the Logan facilities (Logan Healthcare 79, Elihu Healthcare 119, Pond Meadow Healthcare 67 and Atrium Healthcare 84). A fifth facility, Crestview Healthcare, has 42 residents. See Affidavit of Kalina Vendetti annexed hereto as Exhibit "A" (Vendetti Aff. ¶¶ 3-7).

34.    Both Logan Healthcare and Atrium Healthcare failed to pay health insurance premiums for their employees resulting in Tufts Associated Health Maintenance Organization, Inc.'s ("Tufts") termination of health insurance coverage for those employees. See Affidavit of Barry McCarthy annexed hereto as Exhibit "B" (McCarthy Aff. ¶¶ 3-4). In fact, the last premium payment for these two facilities, in the amount of $46,162.59, was returned for insufficient funds and remains due and owing to Tufts. (McCarthy Aff. ¶5) Upon information and belief, these Logan Facilities continued to deduct from their employees' pay checks the employees' contribution for health insurance notwithstanding that the premiums were not being paid.

9

35.    Although replacement insurance has been obtained through Harvard Pilgrim Healthcare, Inc. ("Harvard Pilgrim"), upon information and belief, this new coverage is only paid through June 20, 2003.

36.    As a result of four of the Logan Facilities' failure to maintain workers' compensation insurance coverage the DIA issued four Stop Work Orders. On April 16, 2003, DIA served in hand to Todd Logan the Stop Work Order #452658 for Elihu Healthcare and #452659 for Pond Meadow Healthcare. On April 18, 2003, DIA served in hand to Todd Logan the Stop Work Order #113053 for Logan Healthcare and #176728 for Atrium Healthcare. See Affidavit of Yvonne Vieira-Cardoza annexed hereto as Exhibit "C". (Vieira-Cardoza Aff. ¶ 7)

37.    An appeal hearing of the Stop Work Orders was scheduled for May 29, 2003. Notwithstanding that no one appeared on behalf of the named entities, the DIA continued the hearing at the request of Joel Logan. (Vieira-Cardoza Aff. ¶¶ 3-4)

38.    The continued hearing was held on June 3, 2003. Todd Logan was present representing all of the named entities. Todd Logan testified that the four Logan Facilities were experiencing cash flow problems and owed approximately $167,000 for past due workers' compensation premiums. He further testified that he was unable to work out a payment plan with the carrier. Todd Logan was informed that the issue at the hearing was limited to whether he could provide proof of workers' compensation insurance, which he could not. Based on the evidence, DIA determined that the Elihu Healthcare, Pond Meadow Healthcare, Logan Healthcare and Atrium Healthcare were not in compliance with G.L. c. 152. (Vieira-Cardoza Aff. ¶¶ 8-9)

39.     Following the hearing DIA met with Todd Logan and General Counsel for the DIA, Gregory White.  DIA also contacted the Division of Insurance, Mr. Walter Horn, and the Workers' Compensation Rating & Inspection Bureau, Ms. Ellen Keefe, to assist Todd Logan in obtaining insurance for the four Logan Facilities.  They were unsuccessful in obtaining coverage. (Vieira-Cardoza Aff. ¶ 11)

40.     As of June 5, 2003,  Elihu Healthcare, Pond Meadow Healthcare, Logan Healthcare and Atrium Healthcare remain uninsured and the employees' working in a high risk for injury environment are unprotected.  The DIA is obligated by statute to enforce the Stop Work Orders and call on these facilities to cease operations and notify law enforcement in assisting the department in "preventing employee and other persons from remaining at the place of employment".  G.L. c.152, §25C(3).  (Vieira-Cardoza Aff. ¶ 12).  See also Supplemental Vieira-Cardoza Affidavit annexed hereto as Exhibit C1 (Supp. Vieira-Cardoza Aff. ¶ 7).

41.     Unless a receiver is appointed by the Courts to immediately administer payments for Elihu Healthcare, Pond Meadow Healthcare, Logan Healthcare and Atrium Healthcare these facilities remain in a position where workers' compensation coverage cannot be obtained through the workers' compensation insurance pool and DIA is left without discretion per statute and shall notify the facilities, and the Department of Public Health, that the facilities will be closed on Friday, June 6, 2003, at 4:00 pm.  (Vieira-Cardoza Aff. ¶ 13; Supp. Vieira-Cardoza Aff. ¶ 8)

42.     On information and belief, prior to May 30, 2003, the Department received many complaints regarding the Logan Facilities, including allegations that it often took several days for employees' pay checks to be honored at the bank, that services such as rubbish collection and medical waste collection had been interrupted, and that there was insufficient staff to provide

resident services. On May 30, 2003 there were Department surveyors in three of the facilities to observe conditions. (Vendetti Aff. ¶ 9)

43.    At Pond Meadow Healthcare, the staff denied that there were any problems with the payroll. However, at a surveyor's insistence, the business manager called the bank, and the bank verified that no employee paychecks would be honored. (Vendetti Aff. ¶ 10)

44.    Paul Dreyer, the Director of the Division of Health Care Quality was informed of the problem at Pond Meadow Healthcare. On information and belief, Mr. Dreyer convened a conference call with his top administrative staff and Joel Logan, a licensee of Pond Meadow Healthcare. Joel Logan stated that the IRS had placed a levy of "over a million dollars" on certain of the Logans' business accounts, which accounts included payrolls for Pond Meadow Healthcare, Atrium Healthcare, and Logan Healthcare. (Vendetti Aff. ¶ 11)

45.    Within minutes of the conference call with Joel Logan, an IRS employee spoke with Kalina Vendetti, Mr. Dreyer and his staff. The IRS confirmed that there was a levy against certain Logan accounts. The IRS asked whether the Department could immediately appoint a receiver for the three facilities under levy. The IRS was informed that a receiver could not be appointed immediately, but that if the payroll could be met, and residents kept safe for the week-end, the Department would pursue a receivership on Monday, June 2, 2003. The IRS agreed and the levy against the payroll funds was lifted for that payroll. (Vendetti Aff. ¶ 12)

46.    On Monday, June 2, 2003, Kalina Vendetti spoke with the same IRS employee who confirmed that the levy had been lifted on the condition that the Department seeks the appointment of a receiver for all of the Logan Facilities. The IRS stated that the levy included Elihu Healthcare, though that particular levy had not been enforced on Friday because Elihu

12

Healthcare was to be sold. While there was no levy against Crestview at that time, the IRS employee stated that there were liens against the five Logan Facilities, including Crestview, in excess of $12.5 million dollars. (Vendetti Aff. ¶ 13)

47.    The Department believes that if a receiver is not appointed for the Logan Facilities, the IRS will re-impose its levy against the facilities' accounts and employees will not be paid on Friday June 6, 2003. In addition, other financial problems and irregularities are causing serious problems at all of the five Logan Facilities rendering them unable to use resources effectively and efficiently to attain or maintain resident welfare. (Vendetti Aff. ¶ 14)

48.    The IRS has recorded assessments and tax liens against the five Logan Facilities for unpaid employment taxes totaling over $6 million. See Affidavit of Jay Kelly annexed hereto as Exhibit "D" (Kelly Aff. at ¶¶ 3-9).

49.    The Department's Division of Health Care Quality performs inspectional surveys of long-term care facilities to (a) ensure compliance with state and federal laws and regulations for continued participation in Medicare and Medicaid; and (b) investigate complaints filed against a facility.

50.    On September 11, 2002 the Department conducted a recertification survey at Elihu Healthcare. As a result of that survey the facility was found to be improperly managing the funds in the resident personal needs accounts and failed to insure that thousands of dollars of residents' funds were properly accounted for. In addition, other deficiencies included, but were not limited to, some residents suffering serious injuries the cause of which could not be determined and the important medical needs of other residents being left untreated. See Affidavit of Jill Mazzola attached hereto as Exhibit "E" (Mazzola Aff. ¶ 6).

51.    Despite several follow-up visits Elihu Healthcare did not come in to compliance until March 13, 2003. (Mazzola Aff. ¶¶ 7-8)

52.    On November 19, 2002 a recertification survey was conducted at Logan Healthcare. As a result of that survey the facility was found to be improperly managing the funds in the resident personal needs accounts and failed to insure that resident funds were properly accounted for. It was found that the facility had actually misappropriated over $20,600 in resident funds. In addition, other findings showed that several residents were injured because the facility was not responsive to residents' grievances and because the facility failed to implement procedures to prevent patient abuse. The survey also revealed that serious medical conditions were not properly treated and that some residents' serious emotional/psychological needs were not met. The facility was not administered in a manner that enabled it to use its resources effectively and efficiently to attain or maintain resident welfare. Logan Healthcare did not come in to compliance until March 12, 2003. (Mazzola Aff. ¶¶ 11-13)

53.    On May 30, 2003, the Department completed a recertification survey at Pond Meadow Healthcare. Although the report of the Department's findings is not yet complete, preliminary findings include, but are not limited to the following deficiencies: inadequate staffing, accumulation of trash secondary to failure of the facility to pay its waste removal company, no pest control so that vents were contaminated with birds and flies abound in the facility, no current administrator, significant medication errors and problems with food sanitation. In addition, although the Department attempted to review records related to the resident personal needs accounts, the facility claimed it was unable to provide said documents. (Mazzola Aff. ¶ 15)

14

54.     On September 27, 2002 the Department conducted a recertification survey at Atrium Healthcare.  As a result of that survey the facility was found to be improperly managing the funds in the resident personal needs accounts ("PNA") and failed to insure that residents' funds were properly accounted for.  For instance, residents' social security checks were deposited into a corporate account out of which the PNA portion was to be sent to the facility for deposit into the residents' accounts.  Oftentimes the corporate check was not sent, or once sent, was dishonored by the bank.  Some residents were owed hundreds, and one resident was owed thousands, of dollars. In addition, and among other things, the Department found that the facility failed to provide adequate staff.  (Mazzola Aff. ¶ 18)

55.     The Department conducted a follow-up visit on December 13, 2002 and the deficiencies related to patient needs accounts had not been corrected. (Mazzola Aff. ¶ 19)

56.     On or about November 15, 2002 the Department performed a monitoring visit at Crestview Healthcare.  The resident personal needs accounts were not properly managed at that time.  The Department's review indicated that the Logan Healthcare business office was holding resident funds in its own accounts for months.  (Mazzola Aff. ¶ 21)

57.     On March 5, 2003 the Department conducted a recertification survey at Crestview Healthcare.  As a result of that survey the Department found other deficiencies that included but were not limited to findings that the facility was deficient in its practice related to prevention and proper treatment of pressure sores and that it failed to prevent accidents.  On April 25, 2003 the Department conducted a follow-up survey and some of the serious deficiencies had not been corrected.  (Mazzola Aff. ¶¶ 22-23)

15

58.    The Department believes that after June 6, 2003, the Logan Facilities will be unable to provide adequate supervision and care to the residents to ensure their health, safety and welfare.  The Department further believes that the financial condition of the Logan Facilities may precipitate abrupt and unsuitable transfers of their residents to other facilities.  (Vendetti Aff. ¶ 14)

## V. CAUSES OF ACTION

### Count I: For Appointment of a Receiver
### Pursuant To G.L. c. 111, § 72M
### (Against Logan Healthcare Facility, Inc., Elihu White Nursing Home, Inc., Pond Meadow Healthcare Facility, Inc. and Atrium Healthcare Facility, LLC )

59.    The Commonwealth realleges paragraphs 1 - 58 of the Petition and Complaint as if each were fully set forth herein.

60.    The Attorney General and the Department of Public Health believe that an emergency exists, as that term is defined in G.L. c. 111, §72M, that presents an imminent danger of death or serious physical harm to the approximately 349 patients living at the Logan Facilities, and that requires the intervention of this Court and the appointment of Receiver over the four Logan Facilities.

61.    The emergency exists because of the gross financial mismanagement of the Logan Facilities by the Defendants that has resulted in an imminent danger that the facilities will be abandoned by its staff and/or shut down by regulatory authorities with little or no notice. Defendants' actions have led to the current situation where, among other things: (a) the four Logan Facilities have been issued Stop Work Orders by the DIA, obligating the DIA, unless a Receiver is appointed and obtains insurance, to call on these facilities to immediately cease

16

58.    The Department believes that after June 6, 2003, the Logan Facilities will be unable to provide adequate supervision and care to the residents to ensure their health, safety and welfare.  The Department further believes that the financial condition of the Logan Facilities may precipitate abrupt and unsuitable transfers of their residents to other facilities.  (Vendetti Aff. ¶ 14)

## V. CAUSES OF ACTION

### Count I: For Appointment of a Receiver
### Pursuant To G.L. c. 111, § 72M
### (Against Logan Healthcare Facility, Inc., Elihu White Nursing Home, Inc., Pond Meadow Healthcare Facility, Inc. and Atrium Healthcare Facility, LLC )

59.    The Commonwealth realleges paragraphs 1 - 58 of the Petition and Complaint as if each were fully set forth herein.

60.    The Attorney General and the Department of Public Health believe that an emergency exists, as that term is defined in G.L. c. 111, §72M, that presents an imminent danger of death or serious physical harm to the approximately 349 patients living at the Logan Facilities, and that requires the intervention of this Court and the appointment of Receiver over the four Logan Facilities.

61.    The emergency exists because of the gross financial mismanagement of the Logan Facilities by the Defendants that has resulted in an imminent danger that the facilities will be abandoned by its staff and/or shut down by regulatory authorities with little or no notice. Defendants' actions have led to the current situation where, among other things: (a) the four Logan Facilities have been issued Stop Work Orders by the DIA, obligating the DIA, unless a Receiver is appointed and obtains insurance, to call on these facilities to immediately cease

16

operations and to prevent employees from remaining at the facilities; (b) the IRS has recorded assessments and tax liens against the Logan Facilities for over $6 million in unpaid employment taxes, and has levied on one or more of those liens. The IRS has indicated that it will re-issue its tax levies, freezing the Logan Facilities' payroll and other accounts, unless a Receiver is appointed to operate the facilities; (c) Tufts' health insurance coverage for the employees of two of the five Logan Facilities was cancelled because of the Defendants' failure to pay premiums.

62.    If the Logan Facilities are abandoned by their staff and/or shut down by order of regulatory authorities it will have a devastating impact on the health and safety of the facilities' residents and patients, presenting an imminent danger of death or serious physical harm.

63.    A receiver is necessary: (a) to protect the immediate health and safety of the residents by ensuring that they receive the care they need, (b) protect the longer-term health and safety of the residents by taking measures to ensure that the facilities remain able to meet their tax and insurance obligations, and are not abandoned by staff or closed by regulatory action, and/or (c) if necessary, to ensure the implementation of orderly and safe closures of the facilities and patient transfers within the next two months.

## Count II: Violations of G.L. c. 93A, §2(a)

**(Against Logan Healthcare Facility, Inc., Elihu White Nursing Home, Inc., Crestview Healthcare Facility, Inc., Pond Meadow Healthcare Facility, Inc. and Atrium Healthcare Facility, LLC, Atrium Nursing Center Limited, Logan Healthcare Management Group, Inc., Joel K. Logan, Florence E. Logan, Mark S. Logan, Mary Ellen Logan, Todd S. Logan, Arthur Logan, Kenneth M. Logan, Jr. and Gregory Logan)**

64.    The Commonwealth realleges paragraphs 1 - 63 of the Petition and Complaint as if each were fully set forth herein.

17

65.     The actions and omissions of the Licensees and other defendants, as described above, constitute violations of the Consumer Protection Act, G.L. c. 93A, §2(a) and regulations promulgated thereunder, as well as federal regulations promulgated under the Nursing Home Reform Act, 42 USC §1369r.

**WHEREFORE**, the Commonwealth requests that this Court grant the following relief:

1.     Appoint a receiver for Logan Healthcare Facility, Inc., Elihu White Nursing Home, Inc., Pond Meadow Healthcare Facility, Inc. and Atrium Healthcare Facility, LLC, pursuant to G.L. c. 111, 72M with authority to take possession and control of the Logan Facilities, which includes the real estate and building thereon, and all tangible equipment used in its operation; continue the business of the Logan Facilities and the care of their patients; manage the Logan Facilities and hire and discharge any employees or consultants of the Logan Facilities; recover and expend in a reasonable and prudent manner any revenues of the Logan Facilities; perform those acts necessary and desirable to accomplish the purpose of this receivership; including, if necessary, the closure of the Logan Facilities; and exercise such additional powers and perform such additional duties as this Court deems just and appropriate.

2.     In accordance with G.L. c. 111, 72Q, order that a lien be placed upon the real properties known as 175 Grove Street, Braintree, Massachusetts, 95 Commercial Street, Braintree, Massachusetts, 188 Summer Street, Weymouth, Massachusetts and 314 Marion Road, Middleboro, Massachusetts, for recoupment of the expenses of this receivership and, after hearing, allow the Commonwealth to recoup the expenses incurred in the prosecution of this case, including reasonable attorneys' fees;

3.    Order that the Defendants and/or their agents, employees, servants, successors, attorneys, assigns, and all other persons and entities, corporate or otherwise, whether acting individually, or in active concert or participation with them, or through any corporation, trust or other device, are temporarily restrained and enjoined from:

(a)    destroying, concealing, altering, defacing, or transferring any records, documents, or other information in any way related to the operation of the five Logan Facilities;

(b)    transferring, pledging, selling, mortgaging, encumbering, or in any way disposing of ownership or custody of any real or personal assets the Defendants own or control, individually or collectively, or may own or control while this restraining order remains in effect, including but not limited to: all real property, wherever located; all bank accounts and all funds contained therein, wherever located; all securities; all household and office furnishings; and all lump-sums of money, of any amount, the Defendants have, or may receive while this restraining order remains in effect, from any source; except such real or personal assets as may be used in the ordinary course of business or for necessary and usual living expenses;

(c)    violating G. L. c. 93A, § 2 and the regulations promulgated thereunder, and the regulations governing the operation and/or closure of long term care facilities in Massachusetts promulgated pursuant to G.L. c. 111, §72, and to 42 U.S.C. 1396r.

4.    Order the Defendants and/or their agents, employees, servants, successors, attorneys, assigns, and all other persons and entities, corporate or otherwise, whether acting individually, or in active concert or participation with them to identify to the Office of the Attorney General, One Ashburton Place, 19th Floor, Boston, Massachusetts 02108, within five (5)

19

days of entry of this order, the location and account numbers for each bank account owned or controlled by the Defendants, including personal bank accounts.

    5.      After a hearing, issue a preliminary injunction in accordance with prayer 3.

    6.      After a trial on the merits:

        A.      Declare that the defendants have engaged in unfair and deceptive acts and practices in violation of G.L. c.93A, §2, the regulations promulgated thereunder, and the regulations promulgated pursuant to G.L. c. 111, §72, and to 42 U.S.C. 1396r;

        B.      Issue a permanent injunction enjoining the defendants from further:

            (1)      violating the state and federal laws governing the operation and/or closure of long term care facilities in Massachusetts;

        C.      Pursuant to G.L. c. 111, §72K and G.L. c.93A, §4, paragraph 1, as amended by St. 1985, c. 468, order the defendants to pay civil penalties in the amount of $2,500 and $5,000, for each violation of G.L. c. 111, §72 and G.L. c.93A, §2, respectively, and the regulations thereunder;

        D.      Pursuant to G.L. c.93A, as amended by St. 1985, c. 468, order the defendants to pay to the Commonwealth the reasonable costs expended in the prosecution of this case, including attorneys' fees; and

        E.      Grant such other and further relief as this Court deems equitable and just.

END OF PAGE 20

COMMONWEALTH OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

By: _____

Stephanie Kahn BBO# 547477
Assistant Attorney General
Jesse M. Caplan BBO# 645615
Assistant Attorney General and
Division Chief
Consumer Protection Division
Public Protection Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 727-2200

F:\users\SKAHN\WPWIN61\WPDOCS\Logan\draftcomplaint6.5.03.wpd

21

**EXHIBIT B**

NOTIFY

4.

### COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
C.A. NO.

03-2093 A

|  |  |
|---|---|
| THOMAS F. REILLY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS | ) ) ) |
| and | ) |
| THE COMMONWEALTH OF MASSACHUSETTS BY ITS DEPARTMENT OF PUBLIC HEALTH, | ) ) ) |
| Plaintiff-Petitioners | ) ) |
| v. | ) ) |
| LOGAN HEALTHCARE FACILITY, INC., LOGAN HEALTHCARE REALTY, LLC, ELIHU WHITE NURSING HOME, INC., ELIHU WHITE REALTY, LLC, CRESTVIEW HEALTHCARE FACILITY, INC., CRESTVIEW MANAGEMENT TRUST, POND MEADOW HEALTHCARE FACILITY, INC., POND MEADOW REALTY, LLC, ATRIUM HEALTHCARE FACILITY, LLC, ATRIUM NURSING CENTER LIMITED LOGAN HEALTHCARE MANAGEMENT GROUP, INC., JOEL K. LOGAN, FLORENCE E. LOGAN, MARK S. LOGAN, MARY ELLEN LOGAN, TODD S. LOGAN, ARTHUR LOGAN KENNETH M. LOGAN, JR., and GREGORY LOGAN, ADMINISTRATOR, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendant-Respondents. | ) ) ) |

### ORDER FOR THE APPOINTMENT OF A TEMPORARY RECEIVER

It appearing to the Court that, as a result of conditions created by Defendants' acts and

omissions, an "emergency" exists as defined under G.L. c.111. §72M. and that the entry of this

Order appointing a temporary receiver is necessary to preserve the health, safety and well-being

of the patients residing at the Logan Healthcare Facility, Inc. d/b/a/ Logan Nursing and

Rehabilitation Center, 75 Grove Street, Braintree, Massachusetts 02184, Elihu White Nursing

Home, Inc. d/b/a Elihu White Nursing and Rehabilitation Center, 95 Commercial Street,

Braintree, Massachusetts 02184, Pond Meadow Healthcare Facility, Inc. d/b/a Pond Meadow

Healthcare Facility 188 Summer Street, Weymouth, Massachusetts 02188 and Atrium Healthcare

Facility, LLC d/b/a Atrium Nursing Center, 314 Marion Road, Middleboro, Massachusetts 02346

(hereinafter collectively referred to as the "Four Logan Facilities"), which are long-term care

facilities;

That a temporary receiver is necessary: (a) to protect the immediate health and safety of the

residents by ensuring that they receive the care they need, (b) protect the longer-term health and

safety of the residents by taking measures to ensure that the facilities remain able to meet their

tax and insurance obligations, and are not abandoned by staff or closed by regulatory action,

and/or (c) if necessary, to ensure the implementation of orderly and safe closure of the facilities

and patient transfers within the next two months; and

That there is both subject matter and personal jurisdiction as well as sufficient basis of fact

presented in the Commonwealth's Complaint and Petition for the Appointment of a Receiver, and

related pleadings, for the entry of this Order.

IT IS HEREBY:

1.    ORDERED that Robert J. Griffin, Esq., of Krokidas & Bluestein, LLP, 141

Tremont Street, Boston, Massachusetts, 02111, be, and hereby is, appointed temporary receiver

of Logan Healthcare Facility, Inc. d/b/a/ Logan Nursing and Rehabilitation Center, 75 Grove

Street, Braintree, Massachusetts 02184, Elihu White Nursing Home, Inc. d/b/a Elihu White

Nursing and Rehabilitation Center, 95 Commercial Street, Braintree, Massachusetts 02184,

Pond Meadow Healthcare Facility, Inc. d/b/a Pond Meadow Healthcare Facility 188 Summer

Street, Weymouth, Massachusetts 02188 and Atrium Healthcare Facility, LLC d/b/a Atrium

Nursing Center, 314 Marion Road, Middleboro, Massachusetts 02346, to manage and operate the

Four Logan Facilities and, if necessary, to effectuate an orderly closure of the Four Logan

Facilities until further order of the Court;

2.    ORDERED that said receiver shall have full power and authority;

(a)    to take custody and control of all cash, property, accounts receivable and other

assets, tangible or intangible, now held or hereafter acquired by the Four Logan

Facilities and to take possession of all books, records and accounts of the Four

Logan Facilities;

(b)    to employ, discharge, assign, supervise and fix the compensation, salaries and

wages for all officers, managers, agents, employees and servants of the Four Logan

Facilities as he may deem necessary and advisable for the proper operation of the

business and management, preservation and protection of their property and their

patients;

(c)    to pay, and satisfy out of any funds now or hereafter coming into the possession of

the Four Logan Facilities, for services hereafter rendered;

(d)    to buy and sell merchandise, supplies and other property and to render services, for

cash or on credit;

3

(e)     to purchase or otherwise acquire for cash or on credit such materials, equipment, machinery, supplies, services or other property as the receiver may deem necessary and advisable in connection with the Four Logan Facilities and the management and preservation of said Four Logan Facilities and to pay for any purchases made hereafter on credit when due;

(f)     to enter into any contracts incidental to the normal and usual operation of said long-term care Four Logan Facilities and the management and temporary preservation of said long-term care Four Logan Facilities;

(g)     to keep the assets and business of the Four Logan Facilities insured in such manner and to such extent as the receiver may deem necessary and advisable;

(h)     to collect and receive all rents, income and profits, and all outstanding accounts, things-in-action and credits due or to become due to the Four Logan Facilities and to hold and receive all monies thus received to that end that the same may be applied under this Order of the Court;

(i)     to pay and discharge out of any funds now or hereafter coming into the possession of the Four Logan Facilities all taxes and similar charges hereafter lawfully incurred in the operation of said business and the temporary preservation and maintenance of said business;

(j)     to expend those funds required to maintain the conditions at the Four Logan Facilities in minimal compliance with the standards required therefor by the Department of Public Health and the Centers for Medicare and Medicaid Services ("CMS");

(k)    to comply with all applicable rules and regulations governing the operation of a long term care Four Logan Facilities and, if necessary, relocate and transfer patients living in the Four Logan Facilities;

(l)    to continue the business of operating and managing the Four Logan Facilities subject to the requirements of paragraph 8 below;

(m)    to wind-down, if necessary, the business of operating and managing the Four Logan Facilities as long-term care Four Logan Facilities, and to transfer all patients currently residing in the Four Logan Facilities to other health care facilities where suitable placement shall have been found for them;

(n)    to do any and all acts not inconsistent with the terms and conditions of this Order to carry out the purpose thereof; and

(o)    to pay accrued wages to existing employees for the purpose of retaining their services during the period of the receivership.

3.    ORDERED that any certification by the Department of Public Health to the Four Logan Facilities hereunder shall run only to the receiver appointed herein and shall not be construed to be a certification of the Four Logan Facilities on behalf of any person other than the receiver, nor shall the certification in any way affect the certification status of the Four Logan Facilities upon the termination of the receivership.

4.    ORDERED that the costs of this receivership as approved by the Court shall be deemed to be reasonable operating costs of the Four Logan Facilities and a lien in favor of the Commonwealth for such costs shall be placed on the properties upon which the Four Logan Facilities are located as provided by G.L. c.111, §72 Q.  Such lien shall not in any way limit

5

recourse to any additional remedy for recouping the Commonwealth's expenditures from the licensees, person(s) responsible for the affairs of the licensees or the owners of the Four Logan Facilities.

5.    ORDERED that the receiver shall file reports of his operations with this Court showing his progress in maintaining health care standards and his receipts, disbursements, accruals and profit or loss for the reporting period and for the duration of the within proceedings, and shall make appropriate filings with the Rate Setting Commission to obtain reimbursement for expenditures which may lawfully be made by said Commission.  Said reports shall be served by the receiver on all parties to this action.

6.    ORDERED that the receiver shall forthwith give written notice to each patient at the Four Logan Facilities, or the legal guardian of each such patient, of the terms of this Order by delivering a copy of this Order.  Said notice shall inform the patient or his/her personal representative of his/her rights to seek to intervene in this proceeding, of the name and address of counsel of record for the parties and, if they cannot afford private counsel, that they may seek legal representation from Greater Boston Legal Assistance Project or similar organization.

7.    ORDERED that the receiver shall, within two weeks of the entry of this Order, report to the Court the existence of any lease, mortgage or security interest held by or owed by any party to this action or any other person and that said receiver shall apply to this Court for an order prior to paying any lease, rent or mortgage payment.  In making such report, the receiver shall comply with the provisions of Section 72P of G.L. c. 111.

8.    ORDERED that the receiver shall operate the Four Logan Facilities in accordance with the duties set forth above for a period of sixty (60) days so as to make a determination as to

whether some or all of the Four Logan Facilities must be closed and, if necessary, commence the

orderly transfer and relocation of the patients of the Four Logan Facilities.

9.    ORDERED that the receiver's bond shall be established at $1,000.00.

ORDERED that during and at the termination of said receivership the Court may make

such further orders as are just and proper.


Date: June ___6___, 2003

_Nancy Stoffier_
Associate Justice of the
Superior Court


I HEREBY ATTEST AND CERTIFY ON

___6/6/03___ THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
ASST / CLERK

**EXHIBIT C**

Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. _03 - 2696 - A_

Thomas F. Reilly, Attorney General of the
Commonwealth of Massachosetts &
The Commonwealth of massachusetts by its
Department of Public Health
_____, Plaintiff(s)

Logan Healthcare Facility, Inc.         Atrium Healthcare Facility, LLC
Logan Healthcare Realty LLC  v.   Atrium Nursing Center Limited
Elihu White Nursing Home, Inc.         Logan Healthcare Management
_____, Defendant(s)     Group, Inc.
Elihu White Realty, LLC         Joel K. Logan, Florence E. Logan,
Crestview Healthcare Facility, Inc.  Mark S. Logan, Mary Ellen Logan,
Crestview management Trust   INTERLOCUTORY ORDER ON  Todd S. Logan,
Pond Meadow Healthcare    PRELIMINARY INJUNCTION  Arthur Logan,
Facility, Inc.               Kenneth M. Logan Jr. +
*Pond Meadow Realty, LLC      Gregory Logan, Administrator

This action came on to be further heard at this sitting upon the return of an order of
notice to show cause why the application for a preliminary injunction should not be
granted, and was argued by counsel, and thereupon, upon consideration thereof, it is
ORDERED and ADJUDGED that ~~upon payment to the clerk of the sum of $2500~~ the
application under the _3rd, 4th and 5th_ prayers of the Complaint
hereby is granted, and the defendants, _as set fth above are_

enjoined and restrained from

3.    Order that the Defendants and/or their agents, employees, servants, successors,

attorneys, assigns, and all other persons and entities, corporate or otherwise, whether acting

individually, or in active concert or participation with them, or through any corporation, trust or

other device, are temporarily restrained and enjoined from:

(a)    destroying, concealing, altering, defacing, or transferring any records, documents,

or other information in any way related to the operation of the five Logan Facilities;

(b)    transferring, pledging, selling, mortgaging, encumbering, or in any way disposing

of ownership or custody of any real or personal assets the Defendants own or control,

individually or collectively, or may own or control while this restraining order remains in effect,

including but not limited to: all real property, wherever located; all bank accounts and all funds

contained therein, wherever located; all securities; all household and office furnishings; and all

lump-sums of money, of any amount, the Defendants have, or may receive while this restraining

order remains in effect, from any source; except such real or personal assets as may be used in

the ordinary course of business or for necessary and usual living expenses;

(c)    violating G. L. c. 93A, § 2 and the regulations promulgated thereunder, and the

regulations governing the operation and/or closure of long term care facilities in Massachusetts

promulgated pursuant to G.L. c. 111, §72, and to 42 U.S.C. 1396r.

4.    Order the Defendants and/or their agents, employees, servants, successors,

attorneys, assigns, and all other persons and entities, corporate or otherwise, whether acting

attorneys, assigns, and all other persons and entities, corporate or otherwise, whether acting

individually, or in active concert or participation with them to identify to the Office of the

Attorney General, One Ashburton Place, 19th Floor, Boston, Massachusetts 02108, within five (5)

days of entry of this order, the location and account numbers for each bank account owned or

controlled by the Defendants, including personal bank accounts.

until further order of Court.

By the Court (                                          J.)

Entered June 6 2003

Assistant Clerk

**EXHIBIT D**

*notify*

**69**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUPERIOR COURT
C.A. NO. 03-2696 A

|  |  |
|---|---|
| THOMAS F. REILLY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS and THE COMMONWEALTH OF MASSACHUSETTS BY ITS DEPARTMENT OF PUBLIC HEALTH, Plaintiff-Petitioners v. LOGAN HEALTHCARE FACILITY, INC., ET AL. Defendant-Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

*July 2, 2004*
*— Filed in lieu of*
*the missing Original*
*Attest: (van Dwell, J)*
*Catherine S. DeSimone*
*Assistant Clerk*

*7-2-04*
*notice sent*
*to all*
*parties*
*L.*

*7-2-04 Allowable see Order*
*(van Dwell J)*

### COMMONWEALTH'S EX PARTE MOTION FOR APPOINTMENT OF TEMPORARY RECEIVER AND ISSUANCE OF WRITS OF ATTACHMENT

Pursuant to G.L. c. 111, §§ 72M and 72N and Mass. R. Civ. P. Rules 4.1(f), the Commonwealth of Massachusetts (the "Commonwealth") moves this honorable Court *ex parte* for the appointment of a Temporary Receiver over defendant Crestview Healthcare Facility, Inc. and the issuance of two Writs of Attachment against Crestview Management Trust and Mary Ellen Logan. In support of this Motion, the Commonwealth relies upon the affidavits and exhibits annexed to this Motion, as well as the Complaint, affidavits and other pleadings previously filed with this Court, and states the following:

1. As of the commencement of this case in June 6, 2003, the Logan family members were officers and/or owners of five nursing homes located in Massachusetts : Logan Healthcare Facility, Inc. ("Logan Healthcare"), Elihu White Nursing Home, Inc. ("Elihu"), Crestview

Healthcare Facility, Inc. ("Crestview"), Pond Meadow Healthcare Facility, Inc. ("Pond Meadow"), and Atrium Healthcare Facility, LLC ("Atrium") (collectively, the "Logan Facilities")

2.    The Complaint and affidavits filed on June 6, 2003 alleged that the Logan family grossly mismanaged the financial operations of these facilities by, among other things, failing to pay: (a) workers compensation insurance for their employees, causing the Division of Industrial Accidents ("DIA") to issue  Stop Work Orders requiring the immediate closure of four of the five Logan Facilities unless a receiver is appointed; (b) health insurance premiums for their employees, even though employee contributions were being deducted from their pay checks, causing two health plans to be terminated; and (c) at least $6 million (and possibly as much as $12.5 million) in employee withholding taxes, causing the Internal Revenue Service ("IRS") to levy upon tax liens which froze the bank account(s) covering three of the facilities.  On May 30, 2003, the three facilities were unable to make payroll, and staff threatened to walk out, until the IRS agreed to release the levy.  The levy was released by the IRS based on assurances from the Department of Public Health that the Commonwealth would seek the appointment of a receiver.

3.    Additionally, the pleadings alleged that the Department of Public Health investigated four of the facilities, Logan Healthcare, Elihu, Crestview and Pond Meadow, and found that the Logan family had mismanaged patient needs accounts in each of those facilities and had misappropriated over $20,600 in resident funds at Logan Healthcare.

4.    After an evidentiary hearing, on June 6, 2003, this Court found that an emergency existed within the meaning of G.L. c. 111, § 72M and appointed attorney Robert Griffin as Temporary Receiver over four of the Logan Facilities, Logan Healthcare, Elihu, Pond Meadow

and Atrium. In accordance with Commonwealth's request, this court also issued a Preliminary Injunction against all nineteen defendants enjoining them from, among other acts, transferring assets, except those assets necessary for the ordinary course of business or usual living expenses. Additionally, this Court issued Writs of Attachment in the amount of $2,000,000 against eleven of the defendants.

5.    As of June 6, 2003, Crestview was the only facility that had maintained both health and workers' compensation insurance. Although Crestview was in arrears with its employment taxes due to the IRS, the Commonwealth understood that Crestview would be working with the IRS to cure its arrears. Thus, at that time, the Commonwealth did not believe that an emergency existed that presented imminent danger of death or serious physical harm to the patients residing at Crestview and, accordingly, did not seek the appointment of a Temporary Receiver over Crestview.

6.    As of March 2, 2004, pursuant to this Court's orders, the Receiver had closed Pond Meadow and sold Elihu. The Receiver is currently in the process of selling the Atrium and Logan facilities.

7.    On Thursday, March 25, 2004, the Commonwealth informed counsel for Joel and Mary Ellen Logan, Crestview Healthcare Facility, Inc. and Crestview Management Trust that the Commonwealth intended to seek on an emergency basis the appointment of a temporary receiver over Crestview due to the apparent insolvency of the facility, as evidenced by the attached affidavits and exhibits. However, at the court house on Friday, March 26, 2004, Crestview provided the Commonwealth with an affidavit from the Director of Nurses ("DON") attesting to the adequacy of staffing and supplies for the facility to cover the coming weekend, as well as the

3

sufficiency of funds to cover the pay roll due on that day. Crestview also represented that it would immediately negotiate payment plans with the IRS, Massachusetts Division of Health Care Finance and Policy ("DHCFP") and Mass. Electric Co.

8.      Since March 26, 2004, the Commonwealth has been monitoring the daily staffing levels. Although Crestview appeared to be staffing the facility, the schedules reflect that adequate staffing has been frequently achieved by nurses and certified nursing assistants ("CNA") working shifts of 16 hours or more. In fact during the month of April, five CNA's worked 170 hours or more, and during the month of May, seven CNA's worked 170 hours or more. During April and May, one nurse worked 219 and 247.5 hours, respectively; and another nurse worked 196 and 184.5 hours, respectively. Nurses routinely work 16 hour shifts and at times nurses have worked 20 hour shifts. Pursuant to 105 CMR 150.007, nursing personnel are not permitted to work on active duty more than 12 hours per day and 48 hours per week, on a regular basis.

9.      The Commonwealth now maintains that Crestview finances have deteriorated and is likely insolvent. Crestview defaulted for a second time on its payment plans with both DHCFP and Mass. Electric Co. Crestview is no longer able to ensure the health, welfare and safety of its residents. Accordingly, an emergency now exists at Crestview within the meaning of G. L. c. 111, § 72 M, which presents imminent danger of death or serious physical harm to the patients residing at Crestview, requiring the immediate appointment of a Temporary Receiver over Crestview.

10      Specifically, the Commonwealth has been informed, believes and therefore avers that:

4

a.    Crestview failed to pay employment and unemployment taxes to the IRS and owes

through the quarter ending December 31, 2003 approximately $243,062.03.

Notices of Federal Tax Liens were duly filed and are annexed to the Affidavit of

Daniel Yee, Revenue Officer, Internal Revenue Service annexed as Exhibit "A".

b.    Crestview failed to pay Nursing Facility User Fees to the DHCFP and owes from

January 1, 2003 through May 1, 2004 approximately $157,034.72, all as set forth in

the Affidavit of Michael G. Grenier, Pricing Policy Manager, Massachusetts

Division of Health Care Finance and Policy annexed as Exhibit "B".

c.    On December 17, 2003, an Execution issued against Crestview and others, jointly

and severally, in favor of Michael Hunter, Trustee ("Hunter"), in the amount of

$1,089,068.31, in the civil action Michael Hunter, Trustee v. Florence E. Logan et

al., Norfolk Superior Court, Case No. 03-300, which remains unsatisfied after the

sheriff's demand for payment.  A copy of the Execution is annexed as Exhibit "C".

d.    In another civil action, Hunter v. New England Healthcare Development

Corporation et al., Norfolk Superior Court, Case No. 01-141, Crestview, although

not a defendant in the case, was ordered in contempt of court for failing to garnish

one of the defendant's wages, Joel K. Logan, in accordance with the court's prior

order.  A copy of the contempt order is annexed as Exhibit "D".

e.    On June 29, 2004 the Department of Public Health received a telephone call, as

well as a letter, from Lee McCurley, RN, Director of Nurses ("DON") at Crestview.

Ms. McCurley advised DPH that patient care is in jeopardy because of the

following:

5

1.     The DON resigned her position effective at the end of the day 6-25-2004.

2.     The facility Administrator, Joel Logan, cancelled the DON's booked agency staff for the past week-end and refused to allow her to do any more staffing for the facility.

3.     The daily staffing information that the facility has been sending to the Attorney General's office was false.  For instance, a licensed nurse called in sick but her name was left on the staffing sheet and another nurse ended up working three shifts in a row to cover.

4.     The facility is admitting residents whose needs, in the DON's clinical opinion, cannot be met.  For instance, the facility is admitting residents who require IV therapy, which the DON believes cannot be provided at the facility.

5.     The facility's first floor requires two nurses but only one is being scheduled.

6.     On June 25, 2004, Joel Logan lied to DPH stating that employee paychecks were not bouncing as had been reported to DPH.  A nurse had made an anonymous call to DPH informing DPH of her two bounced paychecks, and stating that Joel Logan reimbursed her partly, in cash, in order to persuade her to work on the following week-end.  This nurse is still owed money, and she is waiting to see if the last check issued will be honored.

7.     People have inquired as to whether the DON has resigned or have called the facility wishing to speak to her and the facility is misinforming callers that she is only away for a few days and will return soon.

A copy of DPH's Affidavit of Kath Manocchia , R.N. is annexed as Exhibit "E".

f.  On July 9, 2003, an Execution issued against Crestview in favor of Mass. Electric Co. in the amount of $13,963.60, for unpaid electricity charges, in the civil action <u>Mass. Electric Co. v. Crestview Healthcare Facility, Inc.</u>, Brockton District Court, Case No. 200215CV002049, which remains unsatisfied after the sheriff's demand for payment.  Mass. Electric Co. has instructed its attorney to commence a lawsuit for the appointment of a creditor receiver over Crestview.  As of June 16, 2004, Crestview's obligations to Mass. Electric Co. have increased to $18,097.88.  A copy of the Joint Affidavit of Mass. Electric Co. and its counsel, as well as the Execution are collectively annexed as Exhibit "F".

11.  Although Crestview is a 50 bed long term care facility, the census is currently 40. Accordingly, Crestview's apparent insolvency is not likely to abate.

12.  If Crestview is abandoned by its staff, or its funds are levied by the IRS or other creditors, or a creditor receiver is appointed over the facility, it will have a devastating impact on the health and safety of the facility's residents, presenting an imminent danger of death or serious physical harm.

13.  A receiver is necessary: (a) to protect the immediate health and safety of the residents by ensuring that they receive the care they need, (b) protect the long term health and safety of the residents by taking measures to ensure that the facility remains able to meet its tax and other obligations, and is not abandoned by staff, and/or (c) if necessary, to ensure the implementation of orderly and safe closures of the facility and patient transfers within the next two months.

14.  Given the Logan family's financial history of mismanagement, including the

misappropriation of patient funds, the Commonwealth believes that immediate and irreparable injury, loss, or damage will result to the Commonwealth if the Defendants are given prior notice of the within Motion.

15.    There is a clear danger that the Defendants, if notified in advance of the attachment of real estate, will convey property, conceal property, destroy property or remove property from the state.

16.    The Commonwealth is not aware of any liability insurance available to satisfy the potential judgment it expects to recover against the Defendants.

17.    There is a strong likelihood that the Commonwealth will recover a judgment against the Defendants in an amount equal to or greater than $250,000 as a result of the Defendants' violation of G. L. c. 93A and G.L. c. 111, §72 in connection with their operation of long term care facilities in the Commonwealth.

**WHEREFORE**, the Commonwealth of Massachusetts requests relief as follows:

1.    That this Court enter an order appointing a receiver for Crestview Healthcare Facility, Inc., pursuant to G.L. c. 111, 72M, with authority to take possession and control of the Crestview facility, which includes the real estate and building thereon, and all tangible equipment used in its operation; continue the business of Crestview and the care of its patients; manage Crestview and hire and discharge any employees or consultants of Crestview; recover and expend in a reasonable and prudent manner any revenues of Crestview; perform those acts necessary and desirable to accomplish the purpose of this receivership; including, if necessary, the closure of Crestview; and exercise such additional powers and perform such additional duties as this Court deems just and appropriate.

8

2.  That this Court enter an order in accordance with G.L. c. 111, 72Q, that a lien be placed upon the real property known as 86 Greenleaf Street, Quincy, Massachusetts, for recoupment of the expenses of this receivership and, after hearing, allow the Commonwealth to recoup the expenses incurred in the prosecution of this case, including reasonable attorneys' fees;

3.  That this Court issue two Writs of Attachment each in the amount of $250,000 against Crestview Management Trust and Mary Ellen Logan; and

4.  That this Court enter such other and further relief as it deems just.

COMMONWEALTH OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL

By:_____

Stephanie Kahn BBO# 547477
Assistant Attorney General
Jesse M. Caplan BBO# 645615
Assistant Attorney General and Division Chief
Consumer Protection Division
Public Protection Bureau
One Ashburton Place
Boston, MA 02108-1698
(617) 727-2200

H:\WPDOCS\Logan\mot.receiver.crestview.6.29.04.wpd

9

EXHIBIT "A"

## Affidavit of Daniel Yee, Revenue Officer
## INTERNAL REVENUE SERVICE

1. My name is Daniel Yee, and I am a revenue officer with the Internal Revenue Service. My office address is 1250 Hancock Street, Ste 503 S, Quincy Massachusetts 02169.

2. I have personal knowledge of the following information and facts.

3. Crestview Healthcare Facility Inc. ("Crestview"): currently the Internal Revenue Service has duly filed Notices of Federal Tax Liens, representing employment and unemployment taxes due and owing from Crestview, in the total amount of $ 243,062.03.

4. Specifically, employment taxes for the quarters as follows

   $ 7,332.33 for July 1, 2002 through September 30, 2002;
   $ 22,340.19 for October 1, 2002 through December 31, 2002;
   $ 32,536.25 for January 1, 2003 through March 31, 2003;
   $ 41,651.71 for April 1, 2003 through June 30, 2003;
   $ 91,468.13 for July 1, 2003 through September 30, 2003;
   $ 41,449.38 for October 1, 2003 through December 31, 2003, and

   unemployment taxes for the years as follows

   $ 5,092.97 for 2002, and
   $ 1,191.07 for 2003.

Facsimiles of these Notices are attached hereto as Exhibit "A".

**I swear that the statements contained in this affidavit are true and accurate to the best of my knowledge and belief.**

**Signed under the pains and penalties of perjury this 30th day of June 2004.**

_Daniel Yee_

**Daniel Yee**

Form 668 (Y)(c)
(Rev. October 2000)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 Lien Unit Phone: (617) 316-2575 | Serial Number 155442304 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.
- IRS will continue to charge penalty and interest until you satisfy the amount you owe.
- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.
- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer  CRESTVIEW HEALTH FACILITY INC , a Corporation

Residence       86 GREENLEAF ST
                QUINCY, MA 02169-4413

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325 (a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2002 | 04-2852337 | 07/08/2002 | 08/07/2012 |  |
| 941 | 06/30/2002 | 04-2852337 | 09/30/2002 | 10/30/2012 | 4152.04 |
| 941 | 09/30/2002 | 04-2852337 | 12/30/2002 | 01/29/2013 | 269.23 |
|  |  |  |  |  | 82584.81 |

| Place of Filing Registry of Deeds Norfolk County Dedham, MA 02026 | Total | $ | 87006.08 |
|---|---|---|---|

This notice was prepared and signed at _____ BOSTON, MA _____, on this,

the ___03rd___ day of __February__, _2004_

| Signature for JAY KELLY | Title REVENUE OFFICER (617) 770-3506 | 21-04-3505 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 3 - Taxpayer's Copy                    Form 668(Y)(c) (Rev. 10-00)

668 (Y)(c)
(October 2000)

# Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #1<br>Lien Unit Phone: (617) 316-2575 | Serial Number<br><br>40325310 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

● This Notice of Federal Tax Lien has been filed as a matter of public record.

● IRS will continue to charge penalty and interest until you satisfy the amount you owe.

● Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.

● See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer  CRESTVIEW HEALTH FACILITY INC , a Corporation

Residence       86 GREENLEAF ST
                QUINCY, MA 02169-4413

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| ✓ 940 | 12/31/2002 | 04-2852337 | 04/14/2003 | 05/14/2013 | 4353.26 |
| ✓ 941 | 12/31/2002 | 04-2852337 | 03/31/2003 | 04/30/2013 | 34894.22 |

| Place of Filing | Registry of Deeds<br>Norfolk County<br>Dedham, MA  02026 | Total $ | 39247.48 |
|---|---|---|---|

This notice was prepared and signed at _____ Boston, MA _____, on this,

the _____ 05th _____ day of ____ June ____, 2003.

| Signature<br>for JAY KELLY | Title<br>REVENUE OFFICER<br>(617) 770-3506 | 21-04-3505 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 3 - Taxpayer's Copy

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60025X

Form 668 (Y)(c)
(February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #1
Lien Unit Phone: (617) 316-2575

| Serial Number | For Optional Use by Recording Office |
|---|---|
| 161299604 | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer CRESTVIEW HEALTH FACILITY INC , a Corporation

Residence         86 GREENLEAF ST
                  QUINCY, MA 02169-4413

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2003 | 04-2852337 | 06/23/2003 | 07/23/2013 | 28795.64 |
| 941 | 06/30/2003 | 04-2852337 | 09/01/2003 | 10/01/2013 | 37614.26 |
| 941 | 09/30/2003 | 04-2852337 | 12/08/2003 | 01/07/2014 | 85365.94 |

Place of Filing    Registry of Deeds
                   Norfolk County        Total $    151775.84
                   Dedham, MA  02026

This notice was prepared and signed at _____ BOSTON, MA _____, on this,

_____ 09th day of ____ March ____ 2004

Signature   _Jane B. Finnigan_                Title
for JAM KELLY                                 REVENUE OFFICER        21-04-3505
                                              (617) 770-3506

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office                    Form 668(Y)(c) (Rev. 2-2004)
                                                     CAT. NO 60025X

1008

Form **668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1<br>Lien Unit Phone: (617) 316-2575 | Serial Number<br><br>170305804 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.

- IRS will continue to charge penalty and interest until you satisfy the amount you owe.

- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.

- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer CRESTVIEW HEALTH FACILITY INC , a Corporation

Residence      86 GREENLEAF ST
               QUINCY, MA 02169-4413

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 941 | 12/31/2003 | 04-2852337 | 03/15/2004 | 04/14/2014 | 32357.11 |

| Place of Filing | | |
|---|---|---|
| Registry of Deeds<br>Norfolk County<br>Dedham, MA   02026 | Total $ | 32357.11 |

This notice was prepared and signed at _____ BOSTON, MA _____, on this,

the _____29th____ day of ____April____, 2004

| Signature<br>for JAY KELLY | Title<br>REVENUE OFFICER<br>(617) 770-3506 | 21-04-3505 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

EXHIBIT "B"

### AFFIDAVIT OF MICHAEL G. GRENIER, PRICING POLICY MANAGER
### MASSACHUSETTS DIVISION OF HEALTH CARE FINANCE AND POLICY

1. My name is Michael G. Grenier, and I am the Pricing Policy Manager with the Massachusetts Division of Health Care Finance and Policy (DHCFP"). My office address is 2 Boylston Street, Boston, Massachusetts 02116.

2. I have personal knowledge of the following information and facts.

3. Pursuant to 114.5 CMR 12.00, effective October 1, 2002, DHCFP assesses a per diem "nursing facility user fee" (the "User Fees") against nursing home facilities for each non-Medicare Patient Day. The per diem was $9.60 for the period October 1, 2002 to August 31, 2003, and was increased to $10.08 effective September 1, 2003. Each facility is required to pay a quarterly assessment to DHCFP determined by multiplying its non-Medicare Patient Days by the per diem fee established by DHCFP. A non-Medicare Patient Day, in essence, means days in which the beds are occupied by Medicaid or private pay residents. The receipts from the assessments, the federal financial participation received by the Commonwealth as a result of expenditures funded by these assessments and interest, are credited to the Health Care Security Trust. 114.5 CMR 12.04(6) and G.L. c.118G, §25.

4. Crestview Healthcare Facility, Inc. ("Crestview") has failed to pay the User Fees to DHCFP. Specifically, Crestview owes User Fees in the amount of $81,094.10 and penalties in the amount of $75,940.62.

5. Assessments for unpaid User Fees and penalties against Crestview are as follows: $18,515.06 in User Fees and $26,315.23 in penalties from January 1, 2003 through March 31, 2003; $33,216 in User Fees and $23,641.60 in penalties from April 1, 2003 through June 30, 2003; an estimated amount of $29,363.04 in User Fees and $3,065.03 in penalties from January 1, 2004 through March 31, 2004. Penalty amounts are outstanding in the amounts of $21,427.26 from October 1, 2002 to December 31, 2002 and $1,491.50 for the period October 1, 2003 to December 31, 2003.

6. Crestview paid the User Fees assessed from July 1, 2003 through September 30, 2003. Crestview made payment on its liability for the period October 1, 2003 through December 31, 2003. However, the check was returned for insufficient funds. The following week Crestview submitted bank checks and made the payment, but Crestview has not paid the accrued penalties in the amount of $1,491.50.

7. On January 16, 2004, DHCFP intercepted Medicaid funds in the amount of $17,102.54, which sum has been applied to and is reflected in the figures set forth above.

8. DHCFP entered into a payment schedule with Crestview for the arrears. Beginning February 25, 2004, Crestview was scheduled to make a payment on the 25th of each month. Crestview made payments for the months of February, March, and April. However, no payment has been made since April 26, 2004.

9. Under the payment plan, Crestview was required to pay $15,000 on May 25, 2004. On June 7, 2004, DHCFP cancelled the payment plan for non-payment.

10. Additionally, Crestview failed to pay its Q(1) 2004 user fee payment in the estimated amount of $29,363.04, which was due May 1, 2004.

**I SWEAR THAT THE STATEMENTS CONTAINED IN THIS AFFIDAVIT ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 25th DAY OF JUNE 2004.

Michael G. Grenier
Pricing Policy Manager
Massachusetts Division of Health Care Finance and Policy

EXHIBIT "C"



## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

No 03-300    To the Sheriffs of our several Counties, or their Deputies

GREETING:

**WHEREAS, MICHAEL HUNTER, as Trustee of King David Trust**

by the consideration of our JUSTICES OF OUR SUPERIOR COURT, holden at Dedham, within and for the County of Norfolk, aforesaid on the 10th day of November, 2003 recovered Judgment against **FLORENCE E. LOGAN, TODD S. LOGAN, ATRIUM HEALTHCARE LLC, THE ATRIUM NURSING CENTER, INC., THE ATRIUM NURSING CENTER LIMITED PARTNERSHIP, CRESTVIEW HEALTHCARE FACILITY, INC., JOEL K. LOGAN AND MARY ELLEN LOGAN, INDIVIDUALLY AND AS TRUSTEES OF CRESTVIEW MANAGEMENT TRUST, ELIHU WHITE REALTY LLC, LOGAN DEVELOPMENT INC., FLORENCE E. LOGAN, TRUSTEE OF LOGAN FAMILY REALTY TRUST, LOGAN HEALTHCARE, INC., LOGAN HEALTHCARE MANAGEMENT GROUP, INC., LOGAN HEALTHCARE REALTY LLC, LOGAN PARK NURSING AND REHABILITATION CENTER LLC, MERRIMACK HEALTHCARE DEVELOPMENT CORPORATION, POND MEADOW REALTY LLC, T.Q. HEALTHCARE MANAGEMENT AND CONSULTING, INC., 78 COMMERCIAL STREET LLC and 593 WASHINGTON PLACE LLC :**

in an action of Complaint for the sum of one million fifty eight thousand eight hundred fourteen dollars and fourteen cents damages and fourteen thousand six hundred twenty five dollars attorney's fees as to us appears of record, with interest to date of this execution in the sum of fifteen thousand six hundred twenty nine dollars and seventeen cents whereof execution remains to be done:

Dam 1,058,814.14
Atty    14,625.00
fee
int.____15,629.17
1,089,068.31

WE COMMAND you therefore, that of the goods, chattels or lands of the said Judgment Debtors, within your precinct, you cause to be paid and satisfied unto the said Judgment Creditor at the value thereof in money, the aforesaid sum being one million eighty nine thousand sixty eight dollars and thirty one cents in the whole, with interest thereon from the day of this execution, and thereof also to satisfy yourself for your own fees; and for want of goods, chattels or lands of the said Judgment Debtors to be by them shown unto you, or found within your precinct to the acceptance of the said Judgment Creditor to satisfy the sums aforesaid, with interest as aforesaid, we command you to take the body of said Judgment Debtors, Florence E. Logan, Todd S. Logan, Joel K. Logan and Mary Ellen Logan and them commit unto our jail in Dedham, in our County of Norfolk, or any jail in your precinct, aforesaid, and detain in your custody within our said jail until they pay the full sum above mentioned, with your fees, or be discharged by said Judgment Creditor, or otherwise by

order of law.

Hereof fail not, and make return of this writ with your doings thereon into the Clerk's office of our said **COURT**, at Dedham within our County of Norfolk, within 60 days after the date of this execution.

**WITNESS**, Suzanne V. DelVecchio, Esquire at Dedham the 17th day of December in the year of our Lord two thousand and three.

_Mary K. Pkeley_

First Assistant Clerk

Norfolk, ss

By virtue of this execution, on the 9th day of January, 2004, I demanded of the within-named debtor corporation, Crestview Healthcare Facility Inc. payment of the within execution, together with my fees, or that said debtor exhibit to me real or personal estate subject to be taken on execution and sufficient to satisfy this execution, upon which I could levy and satisfy same, by delivering to Sheila Ware its Agent and the Officer in charge of its business, an attested copy of this execution, with my said demand endorsed thereon, in hand; but said debtor has failed to pay the same. Service was made at 86 Greenleaf Street, Quincy MA

_(signature)_
Deputy Sheriff

Fees:

| | | |
|---|---|---|
| Demand | 30.00 | |
| Travel | 7.04 | |
| Copies | 10.00 | |
| Conveyance | 1.50 | |
| Post.& Handling | 1.00 | |
| Total Fees: | $49.54 | |

EXHIBIT "D"

67.0

COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

SUPERIOR COURT
NO. CV2001-00141

MICHAEL HUNTER as TRUSTEE of
KING DAVID TRUST,
    Plaintiff

v.

NEW ENGLAND HEALTHCARE
DEVELOPMENT CORPORATION, AS
SOLE GENERAL PARTNER OF NEW
ENGLAND HEALTH LIMITED
PARTNERSHIP, JOEL K. LOGAN,
MARK S. LOGAN, and LOVETTE P.
LOGAN
    Defendants

dated
RECEIVED & FILED
10/9/03   10/17/03
CLERK OF COURTS
NORFOLK COUNTY

## ORDER ON SECOND COMPLAINT FOR CONTEMPT AGAINST CRESTVIEW HEALTHCARE FACILITY, INC.

Upon consideration of Plaintiff's Second Complaint for Contempt Against Crestview Healthcare Facility, Inc., and Mary Ellen Logan, as Treasurer of Crestview Healthcare Facility, Inc., and after hearing arguments of counsel, the Court hereby enters the following findings and order:

### Findings of Fact

1. On March 26, 2002, judgment entered in this action against the defendant Joel K. Logan and others in the amount of $416,064.17. Despite demand, the judgment remains unsatisfied in part. The judgment is now worth over $430,000, with interest through June 30, 2003, and net of payments made.

564508_1/7379-1

2. On March 13, 2003, the Court (Cratsley, J.) entered an Order to Compel Disclosures and Payments by the Defendants Joel K. Logan, Logan Park Nursing and Rehabilitation Center LLC, and Crestview Healthcare Facility, Inc. See docket item 50.0.

3. The Court's March 13, 2003, order required Crestview Healthcare Facility, Inc., as employer of Joel K. Logan, to pay to the plaintiff $242.16 per week, representing the full non-exempt portion of Joel K. Logan's disposable income from Crestview Healthcare Facility, Inc. On July 31, 2003, an order was entered increasing the amount of the garnishment payments to $277.05 per week. See docket item 61.0.

4. One garnishment payment in the increased amount was made for the week ending August 29, 2003. No payments have been received by the plaintiff since that date. Thus, the following amounts remain unpaid through the date of this order:

| | |
|---|---|
| September 5, 2003 | $277.05 |
| September 12, 2003 | $277.05 |
| September 19, 2003 | $277.05 |
| September 26, 2003 | $277.05 |
| October 3, 2003 | $277.05 |

5. The failure of Crestview Healthcare Facility, Inc., is part of a pattern of nonpayment and ignoring this court's orders. See Plaintiff's [First] Complaint for Contempt Against Crestview Healthcare Facility, Inc., and the affidavit supporting it. It has been represented to the Court by counsel for the plaintiff that Crestview Healthcare Facility, Inc., has also failed to comply with Judge Cratsley's orders of August 4 and 21, 2003.

5.    The fair and reasonable value of attorneys' fees incurred by the plaintiff in connection with its second complaint for contempt against Crestview Healthcare Facility, Inc., is $ 1,500.00 for attorneys' fees, and $44.80 for costs.

## Order

Based upon the foregoing findings of fact, it is hereby ORDERED:

1.    that the garnishment defendant Crestview Healthcare Facility, Inc., is in contempt of the Court's July 31, 2003, Order to Compel Payments by Crestview Healthcare Facility, Inc.;

2.    that Crestview Healthcare Facility, Inc., forthwith pay to the plaintiff Michael Hunter, as Trustee of King David Trust, all amounts due under the July 31, 2003, Order, plus interest at the rate of twelve percent per annum from the due date of each such payment through the date of actual payment;

3.    that Crestview Healthcare Facility, Inc., pay to the Commonwealth of Massachusetts the amount of $ 1,000.00 as a fine; and

4.    that Crestview Healthcare Facility, Inc., forthwith to pay to the plaintiff Michael Hunter, Trustee of King David Trust, $ 1,500.00 for attorneys' fees and $44.80 for costs incurred by the plaintiff in connection with his complaint for contempt.

Associate Justice

Entered:    10/9/03

A TRUE COPY
Attest _____
Deputy Assistant Clerk
10/17/03

564508_1/7379-1                            3

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss

No 01-141 To the Sheriffs of our several Counties, or their Deputies

GREETING:

WHEREAS, **MICHAEL HUNTER, TRUSTEE OF KING DAVID TRUST** by the consideration of our JUSTICES OF OUR SUPERIOR COURT, holden at Dedham, within and for the County of Norfolk, aforesaid on the 13th day of January 2004 recovered Judgment against **CRESTVIEW HEALTH CARE FACILITY, INC.** in an action of complaint for the sum of one thousand five hundred dollars for attorney's fees and forty four dollars and eighty cents for costs of suit as to us appears of record whereof execution remains to be done:

cost     44.80
Atty
fees    1,500.00
        1,544.80

WE COMMAND you therefore, that of the goods, chattels or lands of the said Crestview Health Care Facility, Inc. Judgment Debtor within your precinct, you cause to be paid and satisfied unto the said Judgment Creditor at the value thereof in money, the aforesaid sum being one thousand five hundred forty four dollars and eighty cents in the whole, and thereof also to satisfy yourself for your own fees; aforesaid, the full sum above mentioned, with your fees, or be discharged by said Judgment Creditor, or otherwise by order of law.

Hereof fail not, and make return of this writ with your doings thereon into the Clerk's office of our said **COURT**, at Dedham within our County of Norfolk, within 20 years after the date of the said judgment

WITNESS, Suzanne V. DelVecchio, Esquire at Dedham the 17th day of February, in the year of our Lord two thousand and four.

_____
First Assistant Clerk

Michael R. Coppock, Esq
Rubin and Rudman LLP
50 Rowes Wharf
Boston, Ma. 02110

EXHIBIT "E"



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Public Health
250 Washington Street, Boston, MA 02108-4619

MITT ROMNEY
GOVERNOR

KERRY HEALEY
LIEUTENANT GOVERNOR

RONALD PRESTON
SECRETARY

CHRISTINE C. FERGUSON
COMMISSIONER

## AFFIDAVIT OF KATHY MANOCCHIA, R.N.

1.      My Name is Kathy Manocchia.

2.      I am a registered nurse, employed as a complaint investigator by the Department of Public Health, Division of Health Care Quality ("the Department").

3.      My duties include but are not limited to conducting investigations of complaints received by the Department related to patient care and patient rights and documenting findings gathered during inspections.

4.      In my capacity as a complaint investigator I have investigated allegations of resident neglect raised at the Crestview Healthcare Facility.

5.      The Crestview Healthcare Facility ("Crestview" or "the facility") is a 50-bed long term care facility located at 86 Greenleaf Street in Quincy, MA. The current census is 40 .

6.      On June 29, 2004 I received a telephone call from Lee McCurley, RN, Director of Nurses ("DON") at Crestview. Ms. McCurley advised me of the following:

    a. She had officially resigned her DON position effective at the end of the day 6-25-2004.

    b. McCurley stated that the facility Administrator, Joel Logan, cancelled McCurley's booked agency staff for the past week-end and refused to allow her to do any more staffing for the building.

c. McCurley stated that the staffing information the facility was sending to the Attorney General's office was false. For instance, a licensed nurse called out sick but her name was left on the staffing sheet and another nurse ended up working three shifts in a row to cover.

d. McCurley stated that the facility is admitting residents whose needs, in her clinical opinion, cannot be met. For instance, the facility is admitting residents who require IV therapy which McCurley believes cannot be provided at the facility.

e. McCurley stated that the facility's first floor requires two nurses but that only one is being scheduled.

f. McCurley stated that on June 25, 2004, Joel Logan lied to the Department of Public Health regarding whether employee paychecks were bouncing as had been reported. McCurley stated that a nurse had made the anonymous call to DPH regarding her two bounced paychecks, and that Joel Logan reimbursed her partly, in cash, in order to get her to work on the following week-end. This nurse is still owed money, and she is waiting to see if the last check issued will be honored.

g. McCurley states that people have inquired whether she has resigned or have called the facility wishing to speak to her and that the facility is misinforming callers that she is only away for a few days and will return soon.

7.    Attached hereto as exhibit "A" is a letter I received from Elizabeth McCurley.

I SWEAR THAT THE STATEMENTS CONTAINED IN THIS AFFIDAVIT ARE TRUE AND ACCURATE.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 29 DAY OF JUNE, 2004.

Kathy Manocchia
Kathy Manocchia, R.N.
Department of Public Health

# Elizabeth McCurley - 10 Red Deer Road - Londonderry, NH 03053

Department Of Public Health
Division of Health Care Quality                                                    June 29, 2004
10 West Street, 5th Floor
Boston, MA 02111

To whom it may concern,

This letter serves to make you aware that as of Friday, June 25th 2004 I resigned my position as Director of Nursing Services at Crestview Healthcare Facility in Quincy, Massachusetts.

For the past two weeks, the staff has consistently had trouble cashing their paychecks at Weymouth Cooperative Bank on Broad Street in Weymouth. The Stop & Shop and the Farmer's Market will no longer allow employees to cash Crestview paychecks at their organization.

This past week, I had two nurses resign because of their financial troubles at Crestview and 2 perdiem 11-7 nurses who stated " that they would not book with Crestview again because they were stuck working over their assigned shift due to lack of staff".

As the DON, I was responsible for completing the schedule. Each week, it became more and more difficult to secure staffing for the facility on the 3-11 and week-end shifts due to the paycheck issues. Holistic Healthcare is the agency that we utilize and Matthew, the owner, would only send staff if he was paid by Mr. Logan each week. If he didn't get paid, the nurses would get stuck on the units for double shifts. Matthew told me that he had 10 paychecks bounce on him that he received from Mr. Logan and since then, he would only do business with bank checks.

My fear was that when the nursing staff is too tired or when they are angry because they have to stay, the residents are the ones who suffer. Medications do not get passed out in a timely manner, assessment skills are diminished, and anger replaces good attitudes on the nursing unit.

In the best interest of the residents and the staff, I did try to stay on there and work the problems out, but it became very stressful and I received no support from Mr. Logan to enable me to ensure safe care is consistently delivered. Although the average census is 38 the needs of each nursing unit is different and requires the appropriate number of nursing staff members to meet the needs of each resident. I do not feel that Mr. Logan understands this concept of care.

The facility had a plan of correction target date of 6/26/04 from the past survey completed on 5/19/04 and the staff has been working to correct the problems that were identified. Many of the issues required Mr. Logan to monitor areas of concern, in the past two weeks, I rarely saw Mr. Logan in the building. When I telephoned him to review an issue or concern he responded by saying that he would be in to discuss my concerns, he would never come back into the building. This meant I was constantly chasing him down by telephone and leaving messages, as his phone was often shut off.

Due to the financial instability of the facility, there is a ongoing problem with the ordering and delivery of food and medical supplies. They are not timely, and this causes many problems. I also find the department heads are not very honest about this concern.

The facility did not have anyone delivering rehabilitation services for about 6 weeks. During this time frame we had 8 residents with orders to receive therapy, I placed many residents on a functional-maintenance program for the 6-weeks until we got therapy back into the building  A new group has recently been contracted to assist Crestview, but the Director tells me that it is only on a temporary basis.

We were also without a Registered Dietitian for about 3 weeks.  The new consultant is only per-diem and is doing the best she can to assess residents from the list I gave her, she is also in contact with the past Dietitian.

At this point, I feel as though someone needs to intervene and review the staffing and resident care needs in the facility.

I will be happy to answer any questions, or review any concerns with you at anytime.

Sincerely,

Elizabeth Lee McCurley RN

These are some of the employees who have had consistent problems with their paychecks, or who get stuck working double shifts due to lack of staff.

* = no longer working there due to paycheck problems or because they were stuck on the unit

Department Heads:

Myself

Gerry King - Food Service Director

Jim Tibbetts - Director of Maintenance

Sheila Ware - Human Resource Director

---

| * | Denise Bradley LPN | 508-996-5030 |
| | Patricia Calabraro RN | 617-328-5718 |
| * | Karyn Aruda LPN | 617-786-8627 |
| * | Hylda Jean LPN | 508-586-2884 |
| | Brenda Hass RN | 781-963-7484 |
| | Jayne Doine RN | 617-328-4596 |
| | Bernadet Obas LPN | |
| | Betty Denis CNA | |
| | Marie Beaupin CNA | |
| | Batuli Mbaga CNA | |
| | Naffi Sulaiman CNA | |
| | Candy Oliveri CNA | |
| | Jackie Dulong CNA | |

# EXHIBIT E

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 03-2696-A

Thomas F. Reilly, Attorney General of the
Commonwealth of Massachusetts and Commonwealth of Massachusetts
by its Department of Public Health

_____ , Plaintiff(s)

v.

Logan Healthcare Facility, Inc. et al.

_____ , Defendant(s)

## WRIT OF ATTACHMENT

To the sheriffs of our several counties or their deputies:

We command you to attach the goods or estate of defendant Mary Ellen Logan
_____ , of 1035 Main Street., Norwell, MA _____ , to the value of $ 250,000.00 ,
(the amount authorized), as prayed for by plaintiff Commonwealth of Massachusetts
of Massachusetts _____ , whose attorney is Stephanie Kahn, AAG
_____ of Office of The Attorney General _____ , in an action brought by
said plaintiff Commonwealth of Massachusetts against said defendant Logan Healthcare Facility, Inc.
et. at: _____ in the Superior Court Department of the Trial Court for Suffolk
County, and make due return of this writ with your doings thereon.

The complaint in this case was filed on June 6, _____ , 200 3 .

This attachment was approved on JULY 2, _____ , 200 4 , by _____
_____ van Gestel, , J., in the amount of $ 250,000.00 .

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the SECOND day of
JULY _____ , in the year of our Lord two thousand four .

SUFFOLK, ss.     SUPERIOR COURT DEP I.
(date) June 2, 2004
After notice, filing and hearing approval
is given to Deputy Sheriff to make an
attachment is common form - or make an
attachment by trustee process in the sum
of $ 250,000.00

By the Court. ( Van Gestel , J.)
NOTE.
ATTEST:

*Michael Joseph Donovan*

Clerk of Court

Assistant Clerk

This writ of attachment is issued pursuant to Rule 4.1 of the Massachusetts Rules of Civil Procedure.

FORM CIV P 11 1M 10/2000

By virtue of this Writ, on **7/7/2004** at **1:30** in the **afternoon** I attached all the right, title and interest that the within named defendant(s), Mary Ellen Logan, has/have in and to any and all real estate in the County of Plymouth.

*Dianne M Hogan*
Deputy Sheriff

Later, on **7/7/2004** I deposited at the Registry of Deeds of said County of Plymouth, an attested copy of the within writ and finding and order for approval of attachment together with so much of my return as relates to the attachment of said real estate.

*Dianne M Hogan*
Deputy Sheriff

Later, on **7/7/2004** I notified the defendant(s) by mailing to his/her/their last known address an attested copy of the within writ and finding and order for approval of attachment together with so much of my return as relates to the attachment of said real estate and it's recording at the Plymouth County Registry of Deeds to wit: 1035 Main Street, Norwell, MA 02061

*Dianne M Hogan*
Deputy Sheriff

Fees:
| | |
|---|---|
| Service | $20.00 |
| Copy | $15.00 |
| Travel | $3.20 |
| P+H | $3.00 |
| Registry | $76.00 |
| Total | $117.20 |

Recorded at Plymouth County Registry of Deeds in
BOOK: 28618    PAGE: 205

COMMONWEALTH OF MASSACHUSETT

SUFFOLK, ss.

SUPERIOR COURT DEPARTI
OF THE TRIAL COURT
CIVIL ACTION
No.

v.

WRIT OF ATTACHMENT
(Mass. R. Civ. P. 4.1)

(AFFIX FILING STAMP HERE)

**EXHIBIT F**

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. 03-2696-A

Thomas F. Reilly, Attorney General of the
Commonwealth of Massachusetts and Commonwealth of Massachusetts
by its Department of Public Health

_____ , Plaintiff(s)

v.

Logan Healthcare Facility, Inc. et, al. _____ , Defendant(s)

## WRIT OF ATTACHMENT

To the sheriffs of our several counties or their deputies:

We command you to attach the goods or estate of defendant Crestview Management Trust
_____ , of 86 Greenleaf St., Quincy, MA          to the value of $250,000.00 ,
Commonwealth of Massachusetts
(the amount authorized), as prayed for by plaintiff _____
of Massachusetts , whose attorney is Stephanie Kahn, AAG
_____ , of Office of the Attorney General _____ , in an action brought by
said plaintiff Commonwealth of Mass against said defendant Logan Healthcare Facility, Inc.
et, al. _____ in the Superior Court Department of the Trial Court for Suffolk
County, and make due return of this writ with your doings thereon.

The complaint in this case was filed on          June 6,                           , 200 3 .
This attachment was approved on   JULY 2,          , 200 4 , by  van Gestel,J.,
_____ , J., in the amount of $ 250,000.00                       .

Witness, Suzanne V. DelVecchio, Esquire, at Boston, the_____ SECOND _____ day of
_____ JULY _____ , in the year of our Lord two thousand      four          .

SUFFOLK, ss.     SUPERIOR COURT DEP'T.
(date) July 2, 2004
After notice, filing and hearing approval
is given to Deputy Sheriff to make an
attachment is common form - or make an
attachment by trustee process in the sum
of $250,000.00
By the Court,  ( van Gestel ,J.)
ATTEST:  NOTE:
_____ William S. Altimore
Assistant Clerk

*Michael Joseph Donovan*

· Clerk of Court

This writ of attachment is issued pursuant to Rule 4.1 of the Massachusetts Rules of Civil Procedure.

FORM CIV. P. 11 1M  10/2000

/3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT FOR
CIVIL BUSINESS

CIVIL ACTION

No. 03-2696 A

THOMAS F. REILLY, ATTORNEY, GENERAL OF THE
COMMONWEALTH OF MASSACHUSETTS AND COMMONWEALTH
OF MASSACHUSETTS BY ITS DRPARTMENT OF   PLAINTIFF(S)
PUBLIC HEALTH

v.

LOGAN HEALTHCARE FACILITY, INC., ET AL DEFENDANT(S)

FINDING AND ORDER OF APPROVAL
OF ATTACHMENT
Re: CRESTVIEW MANAGEMENT TRUST
THIS CAUSE CAME ON TO BE HEARD AFTER NOTICE AND OPPORTUNITY TO BE

HEARD, UPON A MOTION FOR APPROVAL OF ATTACHMENT, AND THEREUPON, UPON

CONSIDERATION THEREOF, THE COURT HEREBY FINDS THAT THERE IS A REASONABLE

LIKELIHOOD THAT THE PLAINTIFF WILL RECOVER JUDGMENT, INCLUDING INTEREST

AND COSTS, IN AN AMOUNT EQUAL TO OR GREATER THAN THE AMOUNT OF THE ATTACHMENT

APPROVED HEREIN OVER AND ABOVE ANY LIABILITY INSURANCE SHOWN BY THE DEFENDANT

TO BE AVAILABLE TO SATISFY THE JUDGMENT..

THEREFORE, THE COURT HEREBY APPROVES ATTACHMENT IN  THE AMOUNT

OF $ 250,000.00 (TWO HUNDRED AND FIFTY THOUSAND DOLLARS AND NO/CENTS)

JUSTICE OF THE SUPERIOR COURT DEPARTMENT

ENTERED: JULYE 2, 2004

. HEREBY ATTEST AND CERTIFY ON

7-2-04 THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL QUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

Form Civ.P.9(Rev)      8-82      500

BY.

Norfolk, SS

By virtue of this Writ, on **7/8/2004** at **8:32 am** in the forenoon I attached all the right, title and interest that the within named defendant(s), **Crestview Management Trust** has/have in and to any and all real estate in the County of Norfolk.

Deputy Sheriff

Later, on **7/8/2004** I deposited at the Registry of Deeds of said County of Norfolk, an attested copy of the within writ along with certified copy of Finding and Order of Approval of Attachment together with so much of my return as relates to the attachment of said real estate.

Deputy Sheriff

Later, on **7/8/2004** I notified the defendant(s) by mailing to his/her/their last known address an attested copy of the within writ together with so much of my return as relates to the attachment of said real estate and it's recording at the Norfolk County Registry of Deeds to wit:  86 Greenleaf Street  Quincy, MA  02169.

Deputy Sheriff

Fees:

| | |
|---|---|
| Service | 20.00 |
| Attachment | $0.00 |
| Copy | $15.00 |
| Travel | $8.32 |
| P+H | $2.50 |
| Registry | 75.50 |
| | ---------- |
| Total | $121.32 |

**EXHIBIT G**

JUL.12.2004   4:32PM

Norfolk NO.2375 P.2

Bk. 21282, Page 172

## NOTICE OF LIEN
## PURSUANT TO MASSACHUSETTS GENERAL LAWS CHAPTER 111, §72Q

Notice is hereby given that the undersigned, Robert J. Griffin, Esq., has been appointed by the Suffolk Superior Court (the "Court") temporary receiver of the Crestview Healthcare Facility, Inc., 86 Greenleaf Street, Quincy, MA 02169 (the "Facility"). Pursuant to the Order for the Appointment of A Temporary Receiver (the "Court Order") in Thomas F. Reilly, Attorney General of the Commonwealth of Massachusetts and the Commonwealth of Massachusetts by its Department of Public Health v. Logan Healthcare Facility, Inc., et al., Suffolk Superior Court Civil Action No. 03-2696A, and Massachusetts General Laws Chapter 111, §72Q (the "Statute"), the Commonwealth of Massachusetts has a lien upon the following property: the building in which the Facility is located; the land on which the Facility is located; and any fixtures, equipment or goods used in the operation of the Facility. The lien is in an amount equal to the costs of the receivership as approved by the Court and any other costs permissible under the Statute, the Court Order, or any further order of the Court.

**Record owner of land, building and fixtures:** Joel K. Logan, Trustee of Crestview Management Trust u/d/t dated February 23, 1985 and recorded at the Norfolk Registry of Deeds at Book 6610, Page 363.

**Title reference for land, building and fixtures:** Deed recorded on February 28, 1985 at the Norfolk County Registry of Deeds at Book 6610, Page 371.

The lien described herein shall cover all property described in said deed, as well as all other property, if any, upon which the Facility or any portion thereof or any fixtures, equipment or goods used therein is located.

EXECUTED under seal this 9th day of July, 2004.

Robert J. Griffin, Esq.
Temporary Receiver as Aforesaid

Property Location: 86 Greenleaf Street, Quincy

### COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                           July 9, 2004

On this 9th day of July, 2004, before me, the undersigned notary public, then personally appeared Robert J. Griffin, Esq., Temporary Receiver, proved to me through satisfactory evidence of identification, which were personally known to me, to be the person